IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 2 6 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR, | § | |
|    MOVANT | § | |
| | § | |
| VS. | § | |
| | § | CIVIL NO.  B-01- *195* |
| DIRECTOR COCKRELL OF THE | § | |
| INSTITUTIONAL DIVISION OF THE | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE,   and | § | |
| ATTORNEY GENERAL OF THE STATE | § | |
| OF TEXAS, | § | |
|    ADDITIONAL RESPONDENT | § | |

## POST CONVICTION PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. SEC.2254

LARRY WARNER
ATTORNEY AT LAW
777 E. HARRISON STREET
BROWNSVILLE, TEXAS 78520
(956) 542-4784**544-5234 fax
SBOT 20871500
USDC, SDTX 1230

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 2 6 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR,<br>  MOVANT | §<br>§<br>§ | |
| VS. | §<br>§ | CIVIL NO.  B-99-044 |
| DIRECTOR COCKRELL OF THE<br>INSTITUTIONAL DIVISION OF THE<br>TEXAS DEPARTMENT OF CRIMINAL<br>JUSTICE,  and<br>ATTORNEY GENERAL OF THE STATE<br>OF TEXAS,<br>     ADDITIONAL RESPONDENT | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

## POST CONVICTION PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. SEC.2254

Petitioner's Confinement

This post-conviction Petition for Writ of Habeas Corpus, Pursuant to 28 U.S.C., Sec. 2254, is brought on behalf of Petitioner, Jesus Ledesma Aguilar, prisoner number # 999191, Ellis Unit F-1-2, Huntsville, Texas 77343, by his attorney, Larry Warner, 777 E. Harrison Street, Brownsville, Tx 78520.  Mr. Warner is attorney in charge.  Additional counsel is David Sergi, 104 East Hopkins, Suite 200; San Marcos, Tx 78666.

1.    The name and location of the Court which entered the judgment of conviction under attack: The 107th District Court, Cameron County, Texas.

2.    The date of judgment of conviction: MAY 07, 1996.

3.    The Length of sentence: Death

4.    The nature of the offense involved: "all counts" Capital Murder

5.    What was your plea? Not Guilty.

6.    Kind of Trial:  Jury trial.

7.     Did you testify the trial?  No.

2

8.      Did you appeal judgment of conviction? Yes.

9.      If you did appeal, answer the following:

(A) Name of Court: Court of Criminal Appeals

(B) Result:      The Judgment of conviction and sentence were affirmed.

(C) Date of result: December 10, 1997

10.     Other than a direct appeal form the judgment of conviction and sentence, have you previously filed any Petitions, Applications, or Motions with respect to this judgment in any Federal Court?: Yes.

11.     If your answer to 10, was "yes," give the following information:

1.      Name of Court: The Supreme Court of the United States.

2.      Nature of Proceeding: Petition for Writ of Certiorari

3.      Grounds raised:

        (A)     Whether the Sixth Amendment was violated by admission into evidence of a non testifying co-defendant's confession.

        (B)     Whether the Sixth Amendment analysis is required if a co-defendant's name is omitted from the confession.

4.      Did you receive an evidentiary hearing on your petition, application or motion?   No.

5.      Result:     The Petition for Writ of Certiorari was denied.

6.      Date of result: May 26, 1998.

As to any second petition or motion give the same information.

        (A)     Name of Court: The Court of Criminal Appeals of Texas.

        (B)     Application for Post Conviction Petition for Writ of Habeas Corpus Pursuant to Tex R. Crim. Procedure 11.071

        (C)     Grounds raised:

Ground 1:     Defendant shackled in front of the Jury.

3

The Defendant was displayed before the Jury repeatedly in handcuffs and shackles, despite Defense protests. (Exhibit 1)

**Ground 2:** State sidebar remarks concerning unproven Defendant's threats to witnesses.

At Pre-trial, the Defense asked that the State not be allowed to mention that its witnesses had been threatened unless those threats could be linked to the Defendant. The Court granted the Motion. (6R-6, 11) During the Trial, the Prosecutor made sidebar remarks commenting on the failure of witnesses to appear as being the result of being threatened. (See Exhibit 1)

**Ground 3:** Court failed to provide experts to Defense for Trial Preparation.

At Pre-trial, the Defense requested a psychologist, pathologist, and firearms or ballistic expert. The Court agreed to provide funds for a psychologist if the State called one to testify. (Exhibit 1)   As for the pathologist, the Court took it under advisement, and denied the ballistic expert. (6R-11-16) At trial, a pathologist testified for the State. (20R-723-754). A firearms expert also testified, (20R-680-711) In reading the pathologist's testimony, it was obvious the pathologist didn't know anything more than was in Doctor Davenport's report, who was who actually did the autopsy report.  There were a number of things not done, and blood splattering theory that may have been exploited with an independent expert. (20R-743-754) For example, no cause of death analysis may be converted into a strong reasonable doubt argument when an expert testifying analysis could be done.

The firearms expert testified that the bullets could have come from the 22 caliber weapon, but could not be positive. (20R-686) The witness was unable to identify the weapon or exclude it. (20R-709)

**Ground 4:** Failure to clear up Prejudicial Views Exposure to Jurors.

During the Jury Selection Process, after three persons had already been selected, there was an incident reported in the newspapers concerning a fight between the Defendant and a potential witness. Defense Counsel requested that the Court bring in the jurors and inquire into anything they read, and how it affected them or grant a mistrial.  The Court said it might ask them at a later time and denied the mistrial (13R-702-709)

4

(See Exhibit 1, 19)

Ground 5:    No evidence to support parties finding.

Applicant was indicated for killing two persons during the same criminal transaction. The evidence at trial showed that the Applicant was directly responsible for the death of the mother, Annette Chavez, and that the Co-defendant, Chris Quiroz, was responsible for the death of the father, Leo Chavez. (18R-150-165) There was no evidence that Applicant had any prior design, desire, knowledge, or intent to kill the Chavezes. (18R-21R)

Ground 6:    Due Process Violation to so find.

In order to find that the Defendant (Applicant) was a party to the death of Leo Chavez, the Appellate Court relied on three factors:

(1) The Defendant displayed a firearm and;
(2) Defendant had a motive.
(3) Possession of weapon after the offense.

A reading of the record showed the defendant had a motive against the owner of the trailer, not the deceased and no where is there found any reference to handling a 22 caliber handgun prior to the offense except in the Prosecutor's opening statement. (Aguilar vs State, no.72,470, decided June 18, 1997) (Exhibits 2,3), (R18-28)

Ground 7:    Failure to include lesser offense of Murder in the Charge.

As previously stated, there is evidence that in this case that would have permitted a jury to rationally find Appellant guilty of a lesser charge of murder, while acquitting him of capital murder.

That evidence is the testimony of little Leo Chavez, who testified that he saw the Appellant shoot only one of the two victims. (18R-155) Further, the complete absence from the record of any evidence that would indicate that the Appellant acted as a party to the shooting of the other victim, supports Appellant's claim that the Jury rationally could have found him guilty of the lesser charge, while acquitting him of capital murder.

5

Ground 8:    Failure to grant mistrial because of Jury Tampering.

        During the Trial, a Juror was approached by a person who asked about the case. The Court called the person in and had a short hearing. The person said that she was asking the Juror about another case. The person admitted she was a friend of the deceased and a spectator in this case and in the Christopher Quiroz case. Defense Counsel moved for a mistrial which was denied. The Court then brought in the Juror who stated the person did ask her about the case, asking her what she though and whether he was guilty. (18B R-241-252) (Exhibit 4)

Ground 9:    Failure to require expert to reveal sources of information.

        During the punishment phase of the Trial, the State offered the testimony of an expert who claimed that the Defendant was a member of the Texas Syndicate Prison gang, and that he had obtained the rank as Chairman. Trial counsel asked for the names of the persons who made the claims. He was denied those names (25R-279-292), (Exhibits 6,7,8,9, and 10)

Ground 10:    First Amendment violation - Gang membership evidence.

        The Trial Court allowed the State to introduce evidence of the Defendant's membership in the Texas Syndicate over Defense objection. (25R-253-271, 276-307) (Exhibits 5,6,7,8,9, and 10) There was no issue that justified the introduction of the evidence. The motive for the murders was allegedly personal and had nothing to do with the Gang.

Ground 11:    Article 1, Section 8 (Texas Constitution) violation - gang membership evidence.

Ground 12:    Article 1, Section 10 (Texas Constitution) Self-incrimination violation.

Ground 13:    Due Process violation for State not to enforce its own Constitution.

Ground 14:    Texas Capital Murder Statute violates U.S. Constitution.

        In this cause, despite requests, the Defendant was denied definitions on reasonable expectation, and probability. These definitions are close to the reasonable doubt standard because they relate to the weighing of the evidence to answer the questions. It would seem the Constitution would require

6

that these words be defined.

Ground 15: Failure to provide Definitions at Punishment denies Due Process.

The Texas Court of Criminal Appeals found itself in an uncomfortable position when it declared that the term deliberately did not need to be defined because it had an ordinary meaning known to all. <u>Russell vs. State</u>, 665 SW2d 771 (Tex.Cr.App. 1983), the Court later admitted that jurors were confused by the term and asked the Legislature to define the term. <u>Sattie White vs. State</u>, 786 SW2d 771 (.Cr.App. 1989), <u>Lane vs. State</u>, 743 SW2d 617 (Tex.Cr.App. 1987)

Ground 16: Ineffective Counsel for failure to limit gang evidence.

During the punishment phase, the State introduced evidence showing the defendant's membership in the Texas Syndicate Prison Gang. This included the testimony of several witnesses, including two experts and photographs of his tattoos. The evidence included evidence that Appellant was a high ranking member, and that he had to spill blood to become a member. The criminal activities of the gang were spelled out in great detail. (25R229-307), (Exhibits 6,7,8,9, and 10)

Ground 17: Ineffective Counsel for failure to request limiting Instruction.

At the punishment phase of the Trial, there was large amount of evidence admitted concerning the Defendant's membership in the Texas Syndicate Prison Gang. (25R-229-307), (Exhibits 6,7,8,9, and 10) There was <u>no</u> limiting instructions given to limit the use of the evidence. (Exhibit 14)

Ground 18: Ineffective Counsel for failure to raise Constitutional Issues on appeal.

At Trial, Counsel raised numerous Constitutional issues not addressed on appeal. Those issues included: (6R-16-23), (Exhibit 15)

  (A) Using a questioning scheme violates the 8th and 14th amendment of the U.S. Constitution and Articles 1, Sections 10, 13, and 19 of the Texas Constitution.

  (B) The questioning scheme violates the 6th and 14th Amendment to the U.S. Constitution and

7

Article 1, Section 10 of the Texas Constitution right to effective Counsel.

(H)    The failure to define terms violates the 8th and 14th Amendments of the U.S. Constitution.

The Texas Questioning scheme can certainly be challenged as unconstitutional. For while being upheld, it has been severely questioned. See Johnson vs. Texas, 509 U.S. 350, 113SCt 2658, 125 LED2d 290 (1993). Four Dissenters say it is inadequate.

Ground 19:    Ineffective Counsel for failing to request Independent Impulse Instruction.

The Applicant's Trial Attorney should have requested a Charge on Independent Impulse. None was included in the Court's Charge. (Exhibit 16) (22R-868-878)

Ground 20:    Due Process violation for using false testimony knowingly.

During the punishment phase the State introduced certain statements the Co-defendant made to an investigator, over Defense objection. (25R-223, 115)

The Court of Criminal Appeals found that the testimony did not violate the confrontation clause, because the Applicant wasn't named.

Ground 21:    Due Process violation - Applicant not present at Motion for New Trial Hearing.

At the Motion for New Trial Hearing, the Defendant was not present, even though he wanted to be. (Exhibit 18) This violated the Defendant's (Applicant's) right to be present at the critical stage of his trial.

(D)    Did you receive an evidentiary hearing on your petition, application or motion?    No.

(E)    Result:    Application for Post Conviction Petition for Writ of Habeas Corpus Pursuant to Tex R. Crim. Procedure 11.071 was denied.

(F)    Date of result: June 10, 1998.

    a.    Did you appeal to the highest state court ? Yes.
    b.    Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

8

(1) First Petition, yes.

(G)   If you did not appeal from the adverse action, on any Petition, Application, or Motion, explain briefly why you did not: Inapplicable.


The United States District Court for the Southern District of Texas, Brownsville Division, should take judicial notice of the prior proceedings in this Court in Aguilar v. Johnson, (U.S.D.C.,S.D.Tex. #B-98-30, filed 6 9 99) That Motion to Vacate was dismissed without prejudice to refile it so that Movant could pursue unresolved claims in the courts of the State of Texas.

The United States District Court for the Southern District of Texas, Brownsville Division, should take judicial notice of the proceedings in the courts of the State of Texas after B-98-30 was dismissed without prejudice in this Court. It should take judicial notice of Aguilar v. Johnson, (Court of Criminal Appeals of Texas, writ # 36, 142-02, filed 8 25 2000; denied 11 21 2001)


12.   State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary you may attach pages stating additional grounds and facts supporting same.

Ground 1:   Defendant shackled in front of the Jury.


The Defendant was displayed before the Jury repeatedly in handcuffs and shackles, despite Defense protests. (Exhibit 1)


Ground 2:   State sidebar remarks concerning unproven Defendant's threats to witnesses.
At Pre-trial, the Defense asked that the State not be allowed to mention that its witnesses had been threatened

9

unless those threats could be linked to the Defendant. The Court granted the Motion. (6R-6, 11) During the Trial, the Prosecutor made sidebar remarks commenting on the failure of witnesses to appear as being the result of being threatened. (See Exhibit 1)

Ground 3:    Court failed to provide experts to Defense for Trial Preparation. At Pre-trial, the Defense requested a psychologist, pathologist, and firearms or ballistic expert. The Court agreed to provide funds for a psychologist if the State called one to testify. (Exhibit 1)   As for the pathologist, the Court took it under advisement, and denied the ballistic expert. (6R-11-16) At trial, a pathologist testified for the State. (20R-723-754). A firearms expert also testified, (20R-680-711) In reading the pathologist's testimony, it was obvious the pathologist didn't know anything more than was in Doctor Davenport's report, who was who actually did the autopsy report.  There were a number of things not done, and blood splattering theory that may have been exploited with an independent expert.  (20R-743-754) For example, no cause of death analysis may be converted into a strong reasonable doubt argument when an expert testifying analysis could be done.

The firearms expert testified that the bullets could have come from the 22 caliber weapon, but could not be positive. (20R-686) The witness was unable to identify the weapon or exclude it.  (20R-709)

Ground 4:    Failure to clear up Prejudicial Views Exposure to Jurors. During the Jury Selection Process, after three persons had already been selected, there was an incident reported in the newspapers concerning a fight between the Defendant and a potential witness. Defense Counsel requested that the Court bring in the jurors and inquire into anything they read, and how it affected them or grant a mistrial. The Court said it might ask them at a later time and denied the mistrial (13R-702-709) (See Exhibit 1, 19)

Ground 5:    No evidence to support parties finding.

Applicant was indicated for killing two persons during the same criminal transaction.  The evidence at trial showed that the Applicant was directly responsible for the death of the mother, Annette Chavez, and that the Co-defendant, Chris

10

Quiroz, was responsible for the death of the father, Leo Chavez. (18R-150-165) There was no evidence that Applicant had any prior design, desire, knowledge, or intent to kill the Chavezes. (18R-21R)

Ground 6:     Due Process Violation to so find.

In order to find that the Defendant (Applicant) was a party to the death of Leo Chavez, the Appellate Court relied on three factors:
(1) The Defendant displayed a firearm and;
(2) Defendant had a motive.
(3) Possession of weapon after the offense
A reading of the record showed the defendant had a motive against the owner of the trailer, not the deceased and no where is there found any reference to handling a 22 caliber handgun prior to the offense except in the Prosecutor's opening statement. (Aguilar vs State, no.72,470, decided June 18, 1997) (Exhibits 2,3), (R18-28)

Ground 7:     Failure to include lesser offense of Murder in the Charge.

As previously stated, there is evidence that in this case that would have permitted a jury to rationally find Appellant guilty of a lesser charge of murder, while acquitting him of capital murder.

That evidence is the testimony of little Leo Chavez, who testified that he saw the Appellant shoot only one of the two victims. (18R-155) Further, the complete absence from the record of any evidence that would indicate that the Appellant acted as a party to the shooting of the other victim, supports Appellant's claim that the Jury rationally could have found him guilty of the lesser charge. while acquitting him of capital murder.

Ground 8:     Failure to grant mistrial because of Jury Tampering.

During the Trial, a Juror was approached by a person who asked about the case. The Court called the person in and had a short hearing. The person said that she was asking the Juror about another case. The person admitted she was a friend of the deceased and a spectator in this case and in theChristopher Quiroz case. Defense Counsel moved for a

11

mistrial which was denied. The Court then brought in the Juror who stated the person did ask her about the case, asking her what she though and whether he was guilty. (18B R-241-252) (Exhibit 4)

Ground 9:    Failure to require expert to reveal sources of information.

During the punishment phase of the Trial, the State offered the testimony of an expert who claimed that the Defendant was a member of the Texas Syndicate Prison gang, and that he had obtained the rank as Chairman. Trial counsel asked for the names of the persons who made the claims. He was denied those names (25R-279-292), (Exhibits 6,7,8,9, and 10)

Ground 10:   First Amendment violation - Gang membership evidence.

The Trial Court allowed the State to introduce evidence of the Defendant's membership in the Texas Syndicate over Defense objection. (25R-253-271, 276-307) (Exhibits 5,6,7,8,9, and 10) There was no issue that justified the introduction of the evidence. The motive for the murders was allegedly personal and had nothing to do with the Gang.

Ground 11:   Article 1, Section 8 (Texas Constitution) violation - gang membership evidence.

Ground 12:   Article 1, Section 10 (Texas Constitution) Self-incrimination violation.

Ground 13:   Due Process violation for State not to enforce its own Constitution.

Ground 14:   Texas Capital Murder Statute violates U.S. Constitution.

In this cause, despite requests, the Defendant was denied definitions on reasonable expectation, and probability. These definitions are close to the reasonable doubt standard because they relate to the weighing of the evidence to answer the questions. It would seem the Constitution would require that these words be defined.

Ground 15:   Failure to provide Definitions at Punishment denies Due Process.

The Texas Court of Criminal Appeals found itself in an uncomfortable position when it declared that the term deliberately did not need to be defined because it had an ordinary meaning known to all. Russell vs. State, 665 SW2d

12

771 (Tex.Cr.App. 1983), the Court later admitted that jurors were confused by the term and asked the Legislature to define the term. <u>Sattie White vs. State</u>, 786 SW2d 771 (Tex.Cr.App. 1989), <u>Lane vs. State</u>, 743 SW2d 617 (Tex.Cr.App. 1987)

Ground 16:   Ineffective Counsel for failure to limit gang evidence.

During the punishment phase, the State introduced evidence showing the defendant's membership in the Texas Syndicate Prison Gang. This included the testimony of several witnesses, including two experts and photographs of his tattoos. The evidence included evidence that Appellant was a high ranking member, and that he had to spill blood to become a member. The criminal activities of the gang were spelled out in great detail. (25R229-307), (Exhibits 6,7,8,9, and 10)

Ground 17:   Ineffective Counsel for failure to request limiting Instruction.

At the punishment phase of the Trial, there was large amount of evidence admitted concerning the Defendant's membership in the Texas Syndicate Prison Gang. (25R-229-307), (Exhibits 6,7,8,9, and 10) There was <u>no</u> limiting instructions given to limit the use of the evidence. (Exhibit 14)

Ground 18:   Ineffective Counsel for failure to raise Constitutional Issues on appeal.

At Trial, Counsel raised numerous Constitutional issues not addressed on appeal. Those issues included: (6R-16-23), (Exhibit 15)

    (A)   Using a questioning scheme violates the 8th and 14th amendment of the U.S. Constitution and Articles 1, Sections 10, 13, and 19 of the Texas Constitution.

    (B)   The questioning scheme violates the 6th and 14th Amendment to the U.S. Constitution and Article 1, Section 10 of the Texas Constitution right to effective Counsel.

    (H)   The failure to define terms violates the 8th and 14th Amendments of the U.S. Constitution.

        The Texas Questioning scheme can certainly be challenged as unconstitutional. For while being upheld, it has been severely questioned. See Johnson vs. Texas, 509 U.S. 350, 113SCt 2658, 125 LED2d 290 (1993). Four Dissenters say it is inadequate.

13

Ground 19:    Ineffective Counsel for failing to request Independent Impulse Instruction.

        The Applicant's Trial Attorney should have requested a Charge on Independent Impulse.  None was included in the Court's Charge. (Exhibit 16) (22R-868-878)

Ground 20:    Due Process violation for using false testimony knowingly.

        During the punishment phase the State introduced certain statements the Co-defendant made to an investigator, over Defense objection. (25R-223, 115)

        The Court of Criminal Appeals found that the testimony did not violate the confrontation clause, because the Applicant wasn't's named.

Ground 21:    Due Process violation - Applicant not present at Motion for New Trial Hearing.

        At the Motion for New Trial Hearing, the Defendant was not present, even though he wanted to be.  (Exhibit 18) This violated the Defendant's (Applicant's) right to be present at the critical stage of his trial.

Ground 22:    The line up violated <u>Simmons</u>, the Applicant was the only one in the lineup with a white jumpsuit.

        All others had blue jumpsuits.  A white man was placed next to Applicant, suggesting the white man said to have been a co-actor.

Ground 23:    State's witness Perez gave deliberately false or misleading answer when asked if there was a white man in the line up.  Perez answered that he could not remember.  He gave that answer after conferring with prosecutor Ponce.  Perez conducted the line up.  He remembered but said not.  This affected the Jury's weighing of the Simmons factors.

Ground 24:        The Movant was denied meaningful appellate review.  The Court of Criminal Appeals of Texas did not read the record.  Instead, it merely adopted in to the State's summary of the testimony of the witnesses.  In evaluating the legal sufficiency of the evidence, rather than independently reading the record, the Court of Criminal Appeals of Texas specifically relied in its written opinion on the State's summary of the evidence of the testimony of Albino Garcia. However, Albino Garcia never testified.

        The "testimony" of the witness who never testified,

14

Albino Garcia, was critical. Albino was supposed to testify that Movant had the gun the night before the crime. Movant's having the gun the night before the crime and showing it off, was necessary to support the inference that Movant supplied the gun to the co-actor, Chris Quiroz. This connection between Quiroz and Movant was necessary to support the inference that Movant was a party to the shooting of the first person shot at the scene. (There was direct evidence that Movant himself shot the second person at the scene.) Proving that Movant was one who "aided , counseled, solicited, encouraged, or abetted the commission of the offense" of the first murder was indispensable to proving that Movant was guilty of capital murder, since the capital circumstance was the killing of two people in a single transaction.

As Appellant, Movant presented a Motion for Rehearing and a Further Motion for Rehearing, noting that the purported testimony of Albino Garcia was not in the record. Committed to its decision made without reading the record, the Court of Criminal Appeals of Texas responded to the motions for rehearing by merely deleting reference to the phantom "testimony " of Albino Garcia and reiterating its opinion. This summary reiteration without reading the record was another instance of the denial of meaningful appellate review.

The same process , and the same denial, was duplicated with the review of the factual sufficiency of the evidence by the Court of Criminal Appeals of Texas. (Texas has a separate review of the factual sufficiency of the evidence with a standard separate from the Jackson standard.
Elbert Clewis v. State, 922 S.W.2d 126(Tex. Crim. App. 1996)

Ground 25:  Movant's Appeal was heard by a biased court, the Court of Criminal Appeals of Texas.

The Court of Criminal Appeals of Texas did not read the record. Instead, it merely adopted in to the State's summary of the testimony of the witnesses. In evaluating the legal sufficiency of the evidence, rather than independently reading the record, the Court of Criminal Appeals of Texas specifically relied in its written opinion on the State's summary of the evidence of the testimony of Albino Garcia. However, Albino Garcia never testified.

The "testimony" of the witness who never testified, Albino Garcia, was critical. Albino was supposed to testify that

15

Movant had the gun the night before the crime. Movant's having the gun the night before the crime and showing it off, was necessary to support the inference that Movant supplied the gun to the co-actor, Chris Quiroz. This connection between Quiroz and Movant was necessary to support the inference that Movant was a party to the shooting of the first person shot at the scene. (There was direct evidence that Movant himself shot the second person at the scene.) Proving that Movant was one who "aided , counseled, solicited, encouraged, or abetted the commission of the offense" of the first murder was indispensable to proving that Movant was guilty of capital murder, since the capital circumstance was the killing of two people in a single transaction.

As Appellant, Movant presented a Motion for Rehearing and a Further Motion for Rehearing, noting that the purported testimony of Albino Garcia was not in the record. Committed to its decision made without reading the record, the Court of Criminal Appeals of Texas responded to the motions for rehearing by merely deleting reference to the phantom "testimony " of Albino Garcia and reiterating its opinion. This summary reiteration without reading the record was another instance of the denial of meaningful appellate review.

The same process, and the same denial, was duplicated with the review of the factual sufficiency of the evidence by the Court of Criminal Appeals of Texas. (Texas has a separate review of the factual sufficiency of the evidence with a standard separate from the Jackson standard. Elbert Clewis v. State, 922 S.W.2d 126(Tex. Crim. App. 1996)

The Court of Criminal Appeals of Texas was the "patently biased judge" mentioned by Justice Scalia in **Mayberry v. Pennsylvania**, 400 U.S. 455,465-466, 27 L. Ed. 2d 532, 91 S. Ct. 499 (1971))

The bias was "patent" because the Court's decision was not based on the evidence(the record) but rather on the wholesale acceptance by the Court of the prosecution's rendition of the facts in the prosecution's brief as to what the evidence was at trial rather than on the record itself before the Court of the evidence.

The bias was patent, because, as noted above , the Court of Criminal Appeals of Texas based its initial decision on

16

phantom "evidence" which that very Court cited as the basis for its decision) that was not in the record , that existed only in the summary of the "evidence" offered by the prosecution, and which the Court of Criminal Appeals of Texas adopted wholesale without reading the record before that Court precisely because it was predisposed to favor one litigant (the prosecution) over another (Petitioner as Appellant) without regard to the evidence.

The bias was patent . The Court of Criminal Appeals was given an opportunity to remedy the error that took place on appeal. It got that opportunity in Writ # 36,142-02 when Movant moved to recuse those judges who had sat on his direct appeal to the Court of Criminal Appeals, alleging that the Court of Criminal Appeals had not read the record and had instead relied on an erroneous of the evidence summary of the evidence by the prosecution.  The Motion to Recuse was denied.   The United States District Court should take judicial notice of the motion to recuse and the order denying the motion to recuse.

Movant incorporates by reference, with leave of the Court, if it please, the unexhausted state claims stated in Writ # 36,142,-02 filed before the Court of Criminal Appeals of Texas.  A true copy of Movant's application for habeas corpus in Writ # 36,142,-02 is annexed to this Motion for all purposes. Movant asks the Court's leave to set out those grounds specifically within a time to be set by the Court.

If any equitable tolling be necessary, the United States District Court should accept counsel's representation that he did not receive notice of the 11 21 01 order of the Court of Criminal Appeals until 11 26 01. It should note that this Motion is filed the same day counsel received notice of the denial of his subsequent state writ asserting unexhausted state claims. (Writ # 36,142,-02)

13.     If any of the grounds listed in 12A, B, C, and were not previously presented in any other court, state or federal, state briefly what grounds were not so presented, and give your reasons for not presenting them:

22.     Applicant did not know who his State writ lawyer was. He wrote his State appeal lawyer to ask who his writ

17

attorney was.  By that time he found out about who the writ attorney was and told the writ attorney about the Simmons-violating lineup, the writ had been filed.

23. Applicant did not know who his State writ lawyer was. He wrote his State appeal lawyer to ask who his writ attorney was.  By that time he found out about who the writ attorney was and told the writ attorney about the Simmons-violating lineup, the writ had been filed.

24. This matter was not presented to the Court of Criminal Appeals at the state writ proceeding because the state writ was already filed when the decision of the Court of Criminal Appeals on direct appeal was rendered.

25. It would be fatuous and require the doing of a useless thing to have called upon the Court of Criminal Appeals of Texas to recuse itself in its entirety for bias.  Texas criminal procedure contains no provision for recusing an entire multi-judge court.  Petitioner as Appellant did as much as possible to "present" and "preserve" the error (of bias) by moving for rehearing and moving for further rehearing.

14. Do you have any Petition or Appeal now pending in any Court as to the judgment under attack?  No.

15. Attorneys below:

A. At preliminary hearing: Hon. Alfredo Padilla,1000 Van Buren, Brownsville, Texas 78520

B. Arraignment of plea: Hon.  Alfredo Padilla,1000 Van Buren, Brownsville, Texas 78520

C. At trial: Hon. Alfredo Padilla,1000 Van Buren, Brownsville, Texas 78520

D. At sentencing: Hon. Nat Perez, 845 E. Harrison, Brownsville, Texas 78520

18

E.   On appeal:                     Hon. Rene Gonzalez,1718 Boca Chica
                                    Blvd.,P. C. Box 5134, Brownsville, Texas
                                    78523-5134

F.   In any post-conviction  Proceeding:
                                    Hon.  Mark  Alexander,  Attorney  at
                                    Law,804 Pecan, Mcallen, Texas  78501.

G.   On appeal from any  adverse ruling in a post-conviction proceeding:
                                    Hon.  Mark  Alexander,  Attorney  at
                                    Law,804 Pecan, Mcallen, Texas  78501.

H.   On Petition for Writ of Certiorari:
                                    Hon. Michael B. Charlton, 4515 Yoakum,
                                    Houston, Texas  77006

I.   Writ # 36,142,-02, supra,   Hon. Larry Warner, counsel herein

16.   Were you sentenced on more than one count of an indictment, or on more
      than one indictment, in the same Court and at the same time? **No**.

17.   Do you have any future sentence to serve after you complete
      the sentence imposed by the judgment under attack?  **No**.

(A)   If so, give name and location of Court which imposed sentence to be
      served in the future: **Inapplicable**.

(B)   And give date and length of sentence to be served in the future:
      **Inapplicable**.

(C)   Have you filed, or do you contemplate filing, any Petition attacking the
      judgment which imposed the sentence to be served in the future? **No**.

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be
entitled in this proceeding.

RESPECTFULLY SUBMITTED,

Larry Warner-Attorney At Law

I declare (or certify, verify, or state)under penalty of perjury that the foregoing is true

19

and correct.  Executed on: November 26, 2001

Larry Warner Attorney At Law
777 E. Harrison Street, 2nd Floor
Brownsville, Texas 78520
(956) 542-4784 * (956) 544-5234 fax
State Bar #20871500

20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR, MOVANT | § § § | WRIT |
| VS. | § § § | |
| GARY JOHNSON, DIRECTOR OF THE INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, and ATTORNEY GENERAL OF THE STATE OF TEXAS, | § § § § § § § | CIVIL NO. B-99-044 |
| ADDITIONAL RESPONDENT | § | TR.CT. NO. 95-CR-1088-A |

## CERTIFICATE OF SERVICE

I, Larry Warner, certify that I mailed a true and correct copy of **FIRST AMENDED POST CONVICTION PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. SEC.2254** the document to which this certificate is attached to:

HON. JOHN CORNYN
ATTORNEY GENERAL FOR THE
STATE OF TEXAS
P.O. BOX 12548
CAPITAL STATION
AUSTIN, TEXAS  78711

by U.S. Postal Service this 09th  day of June, 1999.    11/26/01

Larry Warner

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR, | § | |
|    PETITIONER | § | |
| | § | |
| VS. | § | CAUSE NO. B-99-044 |
| | § | |
| GARY JOHNSON, DIRECTOR OF THE | § | |
| INSTITUTIONAL DIVISION OF THE | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, | § | |
|    RESPONDENT | § | |

## VERIFICATION

BEFORE ME, the undersigned authority, on this day personally appeared LARRY WARNER, known to me as a credible person, and fully qualified to make this verification, and who, after first being by me duly sworn, upon his oath deposes and says: that he/she is the Attorney for Petitioner in the above-styled and foregoing **POST CONVICTION PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. SEC.2254**; and that the facts and allegations contained therein are true and correct upon his information and belief, except that he has personal knowledge of Petitioner's confinement, since he saw him on death row on May 25, 1999.

LARRY WARNER

SUBSCRIBED AND SWORN TO before me on this November 26, 2001

NOTARY PUBLIC in and for the
State of Texas
Notary's Printed: MARISOL DE LA FUENTE
My Commission Expires:4 27 05

MARISOL DELAFUENTE
Notary ... State of Texas
My Commission Expires
April 27, 2005

22

**Exhibit. True copy of Motion to Recuse. The copy is submitted so that the United States District Court can take judicial notice of the motion to recuse.**

RETURNABLE TO THE
COURT OF CRIMINAL APPEALS OF TEXAS
CAUSE NO. 95-CR-1088-A

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR, | § | IN THE 107TH DISTRICT COURT |
| APPLICANT | § | CAMERON COUNTY, TEXAS |
| | § | |
| VS. | § | USDC, SD TX, BROWNSVILLE |
| | § | CIVIL NO.  B-99-044 |
| GARY JOHNSON, DIRECTOR OF THE | § | **CAPITAL LITIGANT** |
| INSTITUTIONAL DIVISION OF THE | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE,    and | § | TEX.CRIM.APP.36,142-01(11.071) |
| ATTORNEY GENERAL OF THE STATE | § | |
| OF TEXAS, | § | |
| RESPONDENTS | § | TEX.CRIM.APP.72,470 |
| | | (Direct Appeal) |

**APPLICANT'S MOTION TO RECUSE THE ENTIRE
COURT OF CRIMINAL APPEALS OF TEXAS AND
ALTERNATIVELY ALL THOSE JUDGES WHO SAT ON HIS DIRECT APPEAL**
(Tex.R.App.P. 16.3)

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

Pursuant to Tex.R.App.P. 16.3(a) Applicant files this Motion to Recuse itself in its entirety; alternatively, all those current judges of the court who sat on his direct appeal should recuse themselves.

**INTRODUCTION**

Plaintiff is The State of Texas; Defendant is Jesus Ledezma Aguilar; before the Court of Criminal Appeals he is Applicant for

a writ of habeas corpus pursuant to TEX. CODE CRIM.P. art.11.071.

Plaintiff indicted defendant for capital murder. He was convicted and sentenced to death.

## FACTS

Applicant files this motion at least ten days before this case is set for any determination. He files it contemporaneously with the filing of his Application for a writ of habeas corpus pursuant to TEX.R.CRIM.P. art.11.071.

This application accuses the Court of Criminal Appeals of being the "patently biased judge" censured in **Fulminante v. Arizona**, 499 US 279(1991) in deciding his direct appeal. Applicant avers that the Court did not read the record; instead it relied on the erroneous summary of the evidence provided in the state's brief. In evaluating the legal sufficiency of the evidence, the Court found that Appellant was in possession of the death weapon hours after the shooting. It cited the testimony of Albino Garcia for that proposition. Its summary of Garcia's testimony mirrors the erroneous summary of the evidence in the state's brief. That witness never testified. The court was, writ large, the patently biased judge censured in **Fulminante v. Arizona**, 499 US 279(1991) because it made its determination without relying upon the evidence and having made its determination in advance. The Court deprived Appellant, Applicant here, of meaningful appellate review because

it made its determination without relying upon the evidence in the record, relying instead upon the  erroneous summary of the evidence in the state's brief.

Garcia's testimony was critical in order to make Appellant responsible for the acts of another; the Court of Criminal Appeals relied upon Appellant's having possession of a weapon which might have been the death weapon some hours after the shooting.  They relied upon the testimony of Albino Garcia in order to reach the conclusion that Appellant had possessed such a weapon at such a time.

Applicant attaches affidavits to this motion to establish facts not apparent from the record and incorporates them by reference.

### ARGUMENT & AUTHORITIES

The due course and due process clauses of both the Texas and the United States Constitutions guarantee a party an impartial and disinterested tribunal. **Marshall v. Jerrico, Inc.**, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613 (1980); **Metzger v. Sebek**, 892 S.W.2d 20,37 (Tex. App. –Houston [1ˢᵗ Dist.] 1994. writ denied).

In this case, the personal interest and bias of the judges of the court will deprive Applicant of a fair determination of his Application for Writ of Habeas Corpus Pursuant to TEX. CODE CRIM.P. art. 11.071.

### NOTICE TO OTHER PARTIES

A copy of this motion is served on the other parties on the

same day this motion is filed. Applicant expects this Motion to be presented to the Court of Criminal Appeals of Texas three days after it is filed, unless the Court of Criminal Appeals of Texas orders otherwise. TEX.R.CIV.P. 18.a(b).

## CONCLUSION

A court accused of such bias must deem its impartiality reasonably subject to question. Such questioning of impartiality is reasonable because appellate courts are supposed to base their decisions on the record. Relying upon an erroneous summary of the evidence provided by a party, rather than reading the record, reasonably indicates a lack of impartiality. Individual judges are similarly subject to questioned impartiality.

## PRAYER

For these reasons Applicant asks the court to recuse itself. Alternatively he asks those Judges of the Court of Criminal Appeals who sat on his direct appeal (in 72,470) to recuse themselves. He asks for relief in accord with TEX.R.APP.P. 16.3(b).

Respectfully submitted,

Larry Warner
Attorney for Defendant
777 E. Harrison Street, 2ⁿᵈ Floor
Brownsville, Texas 78520
(956)542-4784 FAX (956) 544-5234
State Bar 20871500

**RETURNABLE TO THE**
**COURT OF CRIMINAL APPEALS OF TEXAS**
**CAUSE NO. 95-CR-1088-A**

| | |
|---|---|
| **JESUS LEDESMA AGUILAR,** | § **IN THE 107TH DISTRICT COURT** |
| **APPLICANT** | § **CAMERON COUNTY, TEXAS** |
| | § |
| **VS.** | § **USDC, SD TX, BROWNSVILLE** |
| | § **CIVIL NO.  B-99-044** |
| **GARY JOHNSON, DIRECTOR OF THE** | § **\*\*CAPITAL LITIGANT\*\*** |
| **INSTITUTIONAL DIVISION OF THE** | § |
| **TEXAS DEPARTMENT OF CRIMINAL** | § |
| **JUSTICE,    and** | § **TEX.CRIM.APP.36,142-01(11.071)** |
| **ATTORNEY GENERAL OF THE STATE** | § |
| **OF TEXAS,** | § |
| **RESPONDENTS** | § **TEX.CRIM.APP.72,470** |
| | **(Direct Appeal)** |

**VERIFICATION**

BEFORE ME, the undersigned authority, on this day personally appeared LARRY WARNER, known to me as a credible person, and fully qualified to make this verification, and who, after first being by me duly sworn, upon his oath deposes and says: that he/she is the Attorney for Petitioner in the above-styled and foregoing **APPLICANT'S MOTION TO RECUSE THE ENTIRE COURT OF CRIMINAL APPEALS OF TEXAS AND ALTERNATIVELY ALL THOSE JUDGES WHO SAT ON HIS DIRECT APPEAL (TEX.R.APP.P. 16.3);** and that the facts and allegations contained therein are true and correct with his personal knowledge and upon his information and belief.

_____
LARRY WARNER

SUBSCRIBED AND SWORN TO before me on this 24'ʰ day of August, 2000.

_____
NOTARY PUBLIC in and for the
State of Texas
Notary's Printed Name:DIANA F. CONNER
My Commission Expires: 06-09-98

Exhibit.  True Copy of the subsequent application for writ of habeas corpus filed returnable to the Court of Criminal Appeals of Texas in :

**RETURNABLE TO THE**
**COURT OF CRIMINAL APPEALS OF TEXAS**
**CAUSE NO. 95-CR-1088-A**

| | | |
|---|---|---|
| **JESUS LEDESMA AGUILAR,** | § | **IN THE 107TH DISTRICT COURT** |
| **APPLICANT** | § | **CAMERON COUNTY, TEXAS** |
| | § | |
| **VS.** | § | **USDC, SD TX, BROWNSVILLE** |
| | § | **CIVIL NO.  B-99-044** |
| **GARY JOHNSON, DIRECTOR OF THE** | § | ****CAPITAL LITIGANT**** |
| **INSTITUTIONAL DIVISION OF THE** | § | |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | |
| **JUSTICE,   and** | § | **TEX.CRIM.APP.36,142-01(11.071)** |
| **ATTORNEY GENERAL OF THE STATE** | § | |
| **OF TEXAS,** | § | |
| **RESPONDENTS** | § | **TEX.CRIM.APP.72,470** |
| | | **(Direct Appeal),** |

which was numbered **36,142-02 in that Court.**

FILE COPY

FILED _____ O'CLOCK _____ M
AURORA DE LA GARZA DIST. CLERK

AUG 2 5 2000

RETURNABLE TO THE
COURT OF CRIMINAL APPEALS OF TEXAS

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

CAUSE NO. 95-CR-1088-A

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR, APPLICANT | § § § | IN THE 107TH DISTRICT COURT CAMERON COUNTY, TEXAS CAUSE NO. 95-CR-1088-A |
| VS. | § § § | (USDC, SD TX, BROWNSVILLE CIVIL NO. B-99-044 **CAPITAL LITIGANT**) |
| GARY JOHNSON, DIRECTOR OF THE INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, and ATTORNEY GENERAL OF THE STATE OF TEXAS, RESPONDENTS | § § § § § § § | (TEX.CRIM.APP.36,142-01(11.071) (TEX.CRIM.APP.72,470 (Direct Appeal) |

---

## POST CONVICTION APPLICATION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO TEX. CODE CRIM.PROC. 11.071; SUBSEQUENT APPLICATION

---

LARRY WARNER
ATTORNEY AT LAW
777 E. HARRISON STREET
BROWNSVILLE, TEXAS 78520
(956)542-4784**544-5234  fax
SBOT 20871500
USDC, SDTX 1230



RETURNABLE TO THE
COURT OF CRIMINAL APPEALS OF TEXAS

CAUSE NO. 95-CR-1088-A

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR,<br> APPLICANT | § <br> § <br> § | IN THE 107TH DISTRICT COURT<br> CAMERON COUNTY, TEXAS<br> CAUSE NO. 95-CR-1088-A |
| VS. | § <br> § | (USDC, SD TX, BROWNSVILLE<br> CIVIL NO.  B-99-044 |
| GARY JOHNSON, DIRECTOR OF THE<br> INSTITUTIONAL DIVISION OF THE<br> TEXAS DEPARTMENT OF CRIMINAL<br> JUSTICE,  and<br> ATTORNEY GENERAL OF THE STATE<br> OF TEXAS,<br>     RESPONDENTS | § <br> § <br> § <br> § <br> § <br> § | **CAPITAL LITIGANT**)<br><br> (TEX.CRIM.APP.36,142-01(11.071)<br><br> (TEX.CRIM.APP.72,470<br> (Direct Appeal) |

## POST CONVICTION APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM.PROC. 11.071; SUBSEQUENT APPLICATION

LARRY WARNER
ATTORNEY AT LAW
777 E. HARRISON STREET
BROWNSVILLE, TEXAS 78520
(956)542-4784**544-5234  fax
SBOT 20871500
USDC, SDTX 1230


FILE COPY

RETURNABLE TO THE
COURT OF CRIMINAL APPEALS OF TEXAS

CAUSE NO. 95-CR-1088-A

| | |
|---|---|
| JESUS LEDESMA AGUILAR,<br>  APPLICANT | §   IN THE 107TH DISTRICT COURT<br>§   CAMERON COUNTY, TEXAS<br>    CAUSE NO. 95-CR-1088-A |
| | § |
| VS. | §   (USDC, SD TX, BROWNSVILLE<br>§   CIVIL NO.   B-99-044 |
| GARY JOHNSON, DIRECTOR OF THE<br>INSTITUTIONAL DIVISION OF THE<br>TEXAS DEPARTMENT OF CRIMINAL<br>JUSTICE,   and | §   **CAPITAL LITIGANT**)<br>§<br>§<br>§   (TEX.CRIM.APP.36,142-<br>    01(11.071) |
| ATTORNEY GENERAL OF THE STATE<br>OF TEXAS,<br>     RESPONDENTS | §<br>§   (TEX.CRIM.APP.72,470<br>    (Direct Appeal) |

## POST CONVICTION APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE CRIM.PROC. 11.071; SUBSEQUENT APPLICATION

Applicant's Confinement

This post-conviction Application for Writ of Habeas Corpus, Pursuant to TEX. CODE CRIM.PROC. 11.071 , is brought on behalf of Applicant, Jesus Ledesma Aguilar, prisoner number # 999191, formerly of  Ellis Unit F-1-2, Huntsville, Texas 77343, now at Livingston, Texas, 12 AE 62, 12002 FM.350 South, Livingston, Tx 77351, by his attorney, Larry Warner, 777 E. Harrison Street, Brownsville, Tx 78520.

1. The name and location of the Court which entered the judgment of conviction under attack: The 107th District Court, Cameron County, Texas.

2. The date of judgment of conviction: MAY 07, 1996.

3. The Length of sentence: interminable: death.

2

4. The nature of the offense involved: "all counts" Capital Murder

5. What was your plea? Not Guilty.

6. Kind of Trial:  Jury trial.

7. Did you testify the trial?  No.

8. Did you appeal judgment of conviction? Yes.

9. If you did appeal, answer the following:

(A) Name of Court: Court of Criminal Appeals of Texas, Number 72,470

(B) Result:   The Judgment of conviction and sentence were affirmed.

(C) Date of result: December 10, 1997

10. Other than a direct appeal form the judgment of conviction and sentence, have you previously filed any Petitions, Applications, or Motions with respect to this judgment in any Federal Court?: Yes.

11. If your answer to 10, was "yes," give the following information:

1. Name of Court: The Supreme Court of the United States.

2. Nature of Proceeding: Petition for Writ of Certiorari

3. Grounds raised:

(A) Whether the Sixth Amendment was violated by admission into evidence of a non testifying co-defendant's confession.

(B) Whether the Sixth Amendment analysis is required if a co-defendant's name is omitted from the confession.

4. Did you receive an evidentiary  hearing on your petition, application or motion?   No.

5. Result:   The Pet.for Writ of Certiorari was denied.

6. Date of result: May 26, 1998.

As to any second petition or motion give the same

3

information.

    (A)   Name of Court: The Court of Criminal Appeals of Texas.

    (B)   Application for Post Conviction Petition for Writ of Habeas Corpus Pursuant to TEX.R.CRIM.PROC. 11.071

    (C)   Grounds raised:

Ground 1:    Defendant shackled in front of the Jury. The Defendant was displayed before the Jury repeatedly in handcuffs and shackles, despite Defense protests.    (Exhibit 1)

Ground 2:    State sidebar remarks concerning unproven Defendant's threats to witnesses.

At Pre-trial, the Defense asked that the State not be allowed to mention that its witnesses had been threatened unless those threats could be linked to the Defendant. The Court granted the Motion. (6R-6, 11) During the Trial, the Prosecutor made sidebar remarks commenting on the failure of witnesses to appear as being the result of being threatened. (See Exhibit 1)

Ground 3:    Court failed to provide experts to Defense for Trial Preparation.

At Pre-trial, the Defense requested a psychologist, pathologist, and firearms or ballistic expert. The Court agreed to provide funds for a psychologist if the State called one to testify. (Exhibit 1)    As for the pathologist, the Court took it under advisement, and denied the ballistic expert. (6R-11-16) At trial, a pathologist testified for the State. (20R-723-754). A firearms expert also testified, (20R-680-711) In reading the pathologist's testimony, it was obvious the pathologist didn't know anything more than was in Doctor Davenport's report, who was who actually did the autopsy report. There were a number of things not done, and blood splattering theory that may have been exploited with an independent expert. (20R-743-754) For example, no cause of death

4

analysis may be converted into a strong reasonable doubt argument when an expert testifying analysis could be done.

The firearms expert testified that the bullets could have come from the 22 caliber weapon, but could not be positive. (20R-686) The witness was unable to identify the weapon or exclude it. (20R-709)

Ground 4: Failure to clear up Prejudicial Views Exposure to Jurors.

During the Jury Selection Process, after three persons had already been selected, there was an incident reported in the newspapers concerning a fight between the Defendant and a potential witness. Defense Counsel requested that the Court bring in the jurors and inquire into anything they read, and how it affected them or grant a mistrial. The Court said it might ask them at a later time and denied the mistrial (13R-702-709) (See Exhibit 1, 19)

Ground 5: No evidence to support parties finding.

Applicant was indicated for killing two persons during the same criminal transaction. The evidence at trial showed that the Applicant was directly responsible for the death of the mother, Annette Chavez, and that the Co-defendant, Chris Quiroz, was responsible for the death of the father, Leo Chavez. (18R-150-165) There was no evidence that Applicant had any prior design, desire, knowledge, or intent to kill the Chavezes. (18R-21R)

Ground 6: Due Process Violation to so find.

In order to find that the Defendant (Applicant) was a party to the death of Leo Chavez, the Appellate Court relied on three factors:

(1) The Defendant displayed a firearm and;

(2) Defendant had a motive.

(3) Possession of weapon after the offense

A reading of the record showed the defendant had a motive against

5

the owner of the trailer, not the deceased and no where is there found any reference to handling a 22 caliber handgun prior to the offense except in the Prosecutor's opening statement. (<u>Aquilar vs State</u>, no.72,470, decided June 18, 1997) (Exhibits 2,3), (R18-28)

Ground 7: Failure to include lesser offense of Murder in the Charge.

As previously stated, there is evidence that in this case that would have permitted a jury to rationally find Appellant guilty of a lesser charge of murder, while acquitting him of capital murder.

That evidence is the testimony of little Leo Chavez, who testified that he saw the Appellant shoot only one of the two victims. (18R-155) Further, the complete absence from the record of any evidence that would indicate that the Appellant acted as a party to the shooting of the other victim, supports Appellant's claim that the Jury rationally could have found him guilty of the lesser charge, while acquitting him of capital murder.

Ground 8: Failure to grant mistrial because of Jury Tampering.

During the Trial, a Juror was approached by a person who asked about the case. The Court called the person in and had a short hearing. The person said that she was asking the Juror about another case. The person admitted she was a friend of the deceased and a spectator in this case and in the Christopher Quiroz case. Defense Counsel moved for a mistrial which was denied. The Court then brought in the Juror who stated the person did ask her about the case, asking her what she though and whether he was guilty. (18B R-241-252) (Exhibit 4)

Ground 9: Failure to require expert to reveal sources of information.

During the punishment phase of the Trial, the State offered the testimony of an expert

6

who claimed that the Defendant was a member of the Texas Syndicate Prison gang, and that he had obtained the rank as Chairman. Trial counsel asked for the names of the persons who made the claims. He was denied those names (25R-279-292), (Exhibits 6,7,8,9, and 10)

Ground 10:    First Amendment violation - Gang membership evidence.

The Trial Court allowed the State to introduce evidence of the Defendant's membership in the Texas Syndicate over Defense objection. (25R-253-271, 276-307) (Exhibits 5,6,7,8,9, and 10) There was no issue that justified the introduction of the evidence. The motive for the murders was allegedly personal and had nothing to do with the Gang.

Ground 11:    Article 1, Section 8 (Texas Constitution) violation - gang membership evidence.

Ground 12:    Article 1, Section 10 (Texas Constitution) Self-incrimination violation.

Ground 13:    Due Process violation for State not to enforce its own Constitution.

Ground 14:    Texas Capital Murder Statute violates U.S. Constitution.

In this cause, despite requests, the Defendant was denied definitions on reasonable expectation, and probability. These definitions are close to the reasonable doubt standard because they relate to the weighing of the evidence to answer the questions. It would seem the Constitution would require that these words be defined.

Ground 15:    Failure to provide Definitions at Punishment denies Due Process.

The Texas Court of Criminal Appeals found itself in an uncomfortable position when it declared that the term deliberately did not need to be defined because it had an ordinary meaning known to all. Russell vs. State, 665 SW2d 771 (Tex.Cr.App. 1983), The Court later

admitted that jurors were confused by the term and asked the Legislature to define the term. <u>Sattie White vs. State</u>, 786 SW2d 771 (.Cr.App. 1989), <u>Lane vs. State</u>, 743 SW2d 617 (Tex.Cr.App. 1987)

Ground 16:    Ineffective Counsel for failure to limit gang evidence.
            During the punishment phase, the State introduced evidence showing the defendant's membership in the Texas Syndicate Prison Gang. This included the testimony of several witnesses, including two experts and photographs of his tattoos.  The evidence included evidence that Appellant was a high ranking member, and that he had to spill blood to become a member.  The criminal activities of the gang were spelled out in great detail. (25R229-307), (Exhibits 6,7,8,9, and 10)

Ground 17:    Ineffective Counsel for failure to request limiting Instruction.
            At the punishment phase of the Trial, there was large amount of evidence admitted concerning the Defendant's membership in the Texas Syndicate Prison Gang.  (25R-229-307), (Exhibits 6,7,8,9, and 10) There was <u>no</u> limiting instructions given to limit the use of the evidence. (Exhibit 14)

Ground 18:    Ineffective Counsel for failure to raise Constitutional Issues on appeal.
            At Trial, Counsel raised numerous Constitutional issues not addressed on appeal. Those issues included: (6R-16-23), (Exhibit 15)
            (A)  Using a questioning scheme violates the 8th and 14th amendment of the U.S. Constitution and Articles 1, Sections 10, 13, and 19 of the Texas Constitution.
            (B)  The questioning scheme violates the 6th and 14th Amendment to the U.S. Constitution and Article 1, Section 10 of the Texas Constitution right to effective Counsel.
            (H)  The failure to define terms violates the 8th and 14th Amendments of the

8

U.S. Constitution.

The Texas Questioning scheme can certainly be challenged as unconstitutional. For while being upheld, it has been severely questioned. See Johnson vs. Texas, 509 U.S. 350, 113SCt 2658, 125 LED2d 290 (1993). Four

Dissenters say it is inadequate.

Ground 19:      Ineffective Counsel for failing to request Independent Impulse Instruction.

The Applicant's Trial Attorney should have requested a Charge on Independent Impulse. None was included in the Court's Charge. (Exhibit 16) (22R-868-878)

Ground 20:      Due Process violation for using false testimony knowingly.

During the punishment phase the State introduced certain statements the Co-defendant made to an investigator, over Defense objection. (25R-223, 115)

The Court of Criminal Appeals found that the testimony did not violate the confrontation clause, because the Applicant wasn't named.

Ground 21:      Due Process violation – Applicant not present at Motion for New Trial Hearing.

At the Motion for New Trial Hearing, the Defendant was not present, even though he wanted to be. (Exhibit 18) This violated the Defendant's (Applicant's) right to be present at the critical stage of his trial.

(D)   Did you receive an evidentiary hearing on your petition, application or motion?    No.

(E)   Result:          Application for Post Conviction Petition for Writ of Habeas Corpus Pursuant to Tex R. Crim. Procedure 11.071 was denied.

(F)   Date of result: June 10, 1998.

a.   Did you appeal to the highest state court ? Yes.

b.   Did you appeal to the highest state

9

court having jurisdiction the result
of action taken on any petition,
application or motion?
(1) First Petition, yes.

(G)  If you did not appeal from the adverse action, on
any Petition, Application, or Motion, explain
briefly why you did not:        Inapplicable.

12.  State concisely every ground on which you claim that you
are being held unlawfully.  Summarize briefly the facts
supporting each ground.   If necessary you may attach
pages stating additional grounds and facts supporting
same.

Ground 1:      Defendant shackled in front of the Jury.


The Defendant was displayed before the
Jury repeatedly in handcuffs and shackles,
despite Defense protests.  (Exhibit 1)


Ground 2:      State sidebar remarks concerning unproven
Defendant's threats to witnesses.
At Pre-trial, the Defense asked that the
State not be allowed to mention that its
witnesses had been threatened unless those
threats could be linked to the Defendant.  The
Court granted the Motion.  (6R-6, 11) During
the Trial, the Prosecutor made sidebar remarks
commenting on the failure of witnesses to
appear as being the result of being
threatened.  (See Exhibit 1)

Ground 3: Court failed to provide experts to Defense for
Trial Preparation.
At Pre-trial, the Defense requested a
psychologist, pathologist, and firearms or
ballistic expert.  The Court agreed to provide
funds for a psychologist if the State called
one to testify. (Exhibit 1)    As for the
pathologist, the Court took it under
advisement, and denied the ballistic expert.
(6R-11-16) At trial, a pathologist testified
for the State.  (20R-723-754).  A firearms
expert also testified, (20R-680-711)  In
reading the pathologist's testimony, it was
obvious the pathologist didn't know anything

10

more than was in Doctor Davenport's report, who was who actually did the autopsy report. There were a number of things not done, and blood splattering theory that may have been exploited with an independent expert. (20R-743-754) For example, no cause of death analysis may be converted into a strong reasonable doubt argument when an expert testifying analysis could be done.

The firearms expert testified that the bullets could have come from the 22 caliber weapon, but could not be positive. (20R-686) The witness was unable to identify the weapon or exclude it. (20R-709)

Ground 4: Failure to clear up Prejudicial Views Exposure to Jurors.

During the Jury Selection Process, after three persons had already been selected, there was an incident reported in the newspapers concerning a fight between the Defendant and a potential witness. Defense Counsel requested that the Court bring in the jurors and inquire into anything they read, and how it affected them or grant a mistrial. The Court said it might ask them at a later time and denied the mistrial (13R-702-709) (See Exhibit 1, 19)

Ground 5: No evidence to support parties finding.

Applicant was indicated for killing two persons during the same criminal transaction. The evidence at trial showed that the Applicant was directly responsible for the death of the mother, Annette Chavez, and that the Co-defendant, Chris Quiroz, was responsible for the death of the father, Leo Chavez. (18R-150-165) There was no evidence that Applicant had any prior design, desire, knowledge, or intent to kill the Chavezes. (18R-21R)

Ground 6: Due Process Violation to so find.

In order to find that the Defendant (Applicant) was a party to the death of Leo Chavez, the Appellate Court relied on three factors:

(1) The Defendant displayed a firearm and;

11

(2) Defendant had a motive.

(3) Possession of weapon after the offense

A reading of the record showed the defendant had a motive against the owner of the trailer, not the deceased and no where is there found any reference to handling a 22 caliber handgun prior to the offense except in the Prosecutor's opening statement. (<u>Aquilar vs State</u>, no.72,470, decided June 18, 1997) (Exhibits 2,3), (R18-28)

Ground 7: Failure to include lesser offense of Murder in the Charge.

As previously stated, there is evidence that in this case that would have permitted a jury to rationally find Appellant guilty of a lesser charge of murder, while acquitting him of capital murder.

That evidence is the testimony of little Leo Chavez, who testified that he saw the Appellant shoot only one of the two victims. (18R-155) Further, the complete absence from the record of any evidence that would indicate that the Appellant acted as a party to the shooting of the other victim, supports Appellant's claim that the Jury rationally could have found him guilty of the lesser charge, while acquitting him of capital murder.

Ground 8: Failure to grant mistrial because of Jury Tampering.

During the Trial, a Juror was approached by a person who asked about the case. The Court called the person in and had a short hearing. The person said that she was asking the Juror about another case. The person admitted she was a friend of the deceased and a spectator in this case and in the Christopher Quiroz case. Defense Counsel moved for a mistrial which was denied. The Court then brought in the Juror who stated the person did ask her about the case, asking her what she though and whether he was guilty. (18B R-241-252) (Exhibit 4)

Ground 9: Failure to require expert to reveal sources of information.

> During the punishment phase of the Trial, the State offered the testimony of an expert who claimed that the Defendant was a member of the Texas Syndicate Prison gang, and that he had obtained the rank as Chairman. Trial counsel asked for the names of the persons who made the claims. He was denied those names (25R-279-292), (Exhibits 6,7,8,9, and 10)

Ground 10: First Amendment violation - Gang membership evidence.

> The Trial Court allowed the State to introduce evidence of the Defendant's membership in the Texas Syndicate over Defense objection. (25R-253-271, 276-307) (Exhibits 5,6,7,8,9, and 10) There was no issue that justified the introduction of the evidence. The motive for the murders was allegedly personal and had nothing to do with the Gang.

Ground 11: Article 1, Section 8 (Texas Constitution) violation - gang membership evidence.

Ground 12: Article 1, Section 10 (Texas Constitution) Self-incrimination violation.

Ground 13: Due Process violation for State not to enforce its own Constitution.

Ground 14: Texas Capital Murder Statute violates U.S. Constitution.

> In this cause, despite requests, the Defendant was denied definitions on reasonable expectation, and probability. These definitions are close to the reasonable doubt standard because they relate to the weighing of the evidence to answer the questions. It would seem the Constitution would require that these words be defined.

Ground 15: Failure to provide Definitions at Punishment denies Due Process.

> The Texas Court of Criminal Appeals found itself in an uncomfortable position when it declared that the term deliberately did not

need to be defined because it had an ordinary meaning known to all. <u>Russell vs. State</u>, 665 SW2d 771 (Tex.Cr.App. 1983), the Court later admitted that jurors were confused by the term and asked the Legislature to define the term. <u>Sattie White vs. State</u>, 786 SW2d 771 (Tex.Cr.App. 1989), <u>Lane vs. State</u>, 743 SW2d 617 (Tex.Cr.App. 1987)

Ground 16:    Ineffective Counsel for failure to limit gang evidence.

During the punishment phase, the State introduced evidence showing the defendant's membership in the Texas Syndicate Prison Gang. This included the testimony of several witnesses, including two experts and photographs of his tattoos. The evidence included evidence that Appellant was a high ranking member, and that he had to spill blood to become a member. The criminal activities of the gang were spelled out in great detail. (25R229-307), (Exhibits 6,7,8,9, and 10)

Ground 17:    Ineffective Counsel for failure to request limiting Instruction.

At the punishment phase of the Trial, there was large amount of evidence admitted concerning the Defendant's membership in the Texas Syndicate Prison Gang. (25R-229-307), (Exhibits 6,7,8,9, and 10) There was <u>no</u> limiting instructions given to limit the use of the evidence. (Exhibit 14)

Ground 18:    Ineffective Counsel for failure to raise Constitutional Issues on appeal.

At Trial, Counsel raised numerous Constitutional issues not addressed on appeal. Those issues included: (6R-16-23), (Exhibit 15)

(A)    Using a questioning scheme violates the 8th and 14th amendment of the U.S. Constitution and Articles 1, Sections 10, 13, and 19 of the Texas Constitution.

(B)    The questioning scheme violates the 6th and 14th Amendment to the U.S. Constitution and Article 1, Section

14

10 of the Texas Constitution right to effective Counsel.

(H)    The failure to define terms violates the 8th and 14th Amendments of the U.S. Constitution.

        The Texas Questioning scheme can certainly be challenged as unconstitutional. For while being upheld, it has been severely questioned. See Johnson vs. Texas, 509 U.S. 350, 113SCt 2658, 125 LED2d 290 (1993). Four Dissenters say it is inadequate.

Ground 19:    Ineffective Counsel for failing to request Independent Impulse Instruction.
    The Applicant's Trial Attorney should have requested a Charge on Independent Impulse. None was included in the Court's Charge. (Exhibit 16) (22R-868-878)

Ground 20:    Due Process violation for using false testimony knowingly.
    During the punishment phase the State introduced certain statements the Co-defendant made to an investigator, over Defense objection. (25R-223, 115)
    The Court of Criminal Appeals found that the testimony did not violate the confrontation clause, because the Applicant wasn't's named.

Ground 21:    Due Process violation - Applicant not present at Motion for New Trial Hearing.
    At the Motion for New Trial Hearing, the Defendant was not present, even though he wanted to be. (Exhibit 18) This violated the Defendant's (Applicant's) right to be present at the critical stage of his trial.

Ground 22:    The line up violated _Simmons_, the Applicant was the only one in the lineup with a white jumpsuit.
    All others had blue jumpsuits. A white man was placed next to Applicant, suggesting the white man said to have been a co-actor.

Ground 23:    State's witness Perez gave deliberately

15

false or misleading answer when asked if there was a white man in the line up. Perez answered that he could not remember. He gave that answer after conferring with prosecutor Ponce. Perez conducted the line up. He remembered but said not. This affected the Jury's weighing of the Simmons factors.

Ground 24:     The Movant was denied meaningful appellate review. The Court of Criminal Appeals of Texas did not read the record. Instead, it merely adopted in to the State's summary of the testimony of the witnesses. In evaluating the legal sufficiency of the evidence, rather than independently reading the record, the Court of Criminal Appeals of Texas specifically relied in its written opinion on the State's summary of the evidence of the testimony of Albino Garcia. However, Albino Garcia never testified.

The "testimony" of the witness who never testified, Albino Garcia, was critical. Albino was supposed to testify that Movant had the gun the night before the crime. Movant's having the gun the night before the crime and showing it off, was necessary to support the inference that Movant supplied the gun to the co-actor, Chris Quiroz. This connection between Quiroz and Movant was necessary to support the inference that Movant was a party to the shooting of the first person shot at the scene. (There was direct evidence that Movant himself shot the second person at the scene.) Proving that Movant was one who "aided , counseled, solicited, encouraged, or abetted the commission of the offense" of the first murder was indispensable to proving that Movant was guilty of capital murder, since the capital circumstance was the killing of two people in a single transaction.

As Appellant, Movant presented a Motion for Rehearing and a Further Motion for Rehearing, noting that the purported testimony of Albino Garcia was not in the record.

16

Committed to its decision made without reading the record, the Court of Criminal Appeals of Texas responded to the motions for rehearing by merely deleting reference to the phantom "testimony" of Albino Garcia and reiterating its opinion. This summary reiteration without reading the record was another instance of the denial of meaningful appellate review.

The same process , and the same denial, was duplicated with the review of the factual sufficiency of the evidence by the Court of Criminal Appeals of Texas. (Texas has a separate review of the factual sufficiency of the evidence with a standard separate from the Jackson standard.
Elbert Clewis v. State, 922 S.W.2d 126(Tex. Crim. App. 1996)

13. If any of the grounds listed in 12A, B, C, and were not previously presented in any other court, state or federal, state briefly what grounds were not so presented, and give your reasons for not presenting them:

TEX.CODE CRIM.PROC. art.11.071 provides in part:
Subsequent Application

Sec. 5. (a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

22. Applicant did not know who his State writ lawyer was. He wrote his State appeal lawyer to ask who his writ attorney was. By that time he found out about who the writ attorney was and told the writ attorney about the Simmons-violating lineup, the writ had been filed.

My name is Larry Warner. I am an attorney admitted to

17

practice before the Supreme Court of the United States
and licensed to practice before the Supreme Court of
Texas.   I spoke to the Applicant and to his state appellate
lawyer, Mr. Rene Gonzalez, about this allegation.
They both told me:

Applicant did not know who his State writ lawyer was.   He
wrote his State appeal lawyer to ask who his writ attorney was.   By
that time he found out about who the writ attorney was and told the
writ attorney about the Simmons-violating lineup, the writ had been
filed.

Here the factual basis for the writ was "unavailable" to the
Applicant because he was in the custody of the state and subject to
severe restrictions on his communications with his attorneys: he
had to do that by mail. The basis for the claim that the line-up
was tainted was effectively unavailable to Applicant because he
could not communicate with his writ attorney. That impediment to
communication was the fault of the Respondent, who had him in
custody.

> 23.   Applicant did not know who his State writ
> lawyer was.   He wrote his State appeal
> lawyer to ask who his writ attorney was.
> By that time he found out about who the
> writ attorney was and told the writ
> attorney about the Simmons-violating
> lineup, the writ had been filed.

> 24.   This matter was not presented to the
> Court of Criminal Appeals at the state
> writ proceeding because the state writ
> was already filed when the decision of
> the Court of Criminal Appeals on direct
> appeal was rendered.

Applicant's confinement is unlawful in the following particulars:

GROUND FOR RELIEF NUMBER 1
The line up violated _Simmons_, the Applicant was the only one
in the lineup with a white jumpsuit.
All others had blue jumpsuits.   A white man was placed next to
Applicant, suggesting the white man said to have been a co-
actor.

Here the factual basis for the writ was "unavailable" to the
Applicant because he was in the custody of the state and subject to
severe restrictions on his communications with his attorneys: he

18

had to do that by mail. The basis for the claim that the line-up was tainted was effectively unavailable to Applicant because he could not communicate with his writ attorney. That impediment to communication was the fault of the Respondent, who had him in custody.

## GROUND FOR RELIEF NUMBER 2

State's witness Perez gave deliberately false or misleading answer when asked if there was a white man in the line up. Perez answered that he could not remember. He gave that answer after conferring with prosecutor Ponce. Perez conducted the line up. He remembered but said not. This affected the Jury's weighing of the Simmons factors.

Here the factual basis for this allegation was not available to Applicant until Mr. Warner investigated the grounds for his Motion to Vacate Sentence filed in the United States District Court for the Southern District of Texas, Brownsville Division. The factual basis for the allegation was "unavailable" to Applicant because of the fault of an agent of the Respondent State, namely the witness who gave deliberately false or misleading answer when asked if there was a white man in the line up. The "unavailability" was the result of the covering up of the misleadingness of the testimony and the falsity of the testimony of the agent of the Respondent State. Since the Respondent was responsible for the unavailability of the factual ground (because Respondent's agent gave the misleading testimony and thus covered up the taintedness of the line-up), the Court should not hold the factual basis to have been available.

## GROUND FOR RELIEF NUMBER 3

The Movant was denied meaningful appellate review. The Court of Criminal Appeals of Texas did not read the record. Instead, it merely adopted in to the State's summary of the testimony of the witnesses. In evaluating the legal sufficiency of the evidence, rather than independently reading the record, the Court of Criminal Appeals of Texas specifically relied in its written opinion on the State's summary of the evidence of the testimony of Albino Garcia. However, Albino Garcia never testified.

The "testimony" of the witness who never testified, Albino Garcia, was critical. Albino was supposed to testify that Movant had the gun the night before the crime. Movant's having the gun the night before the crime and showing it off, was necessary to support the inference that Movant supplied the gun to the co-actor, Chris Quiroz. This connection between Quiroz and Movant was necessary to

19

support the inference that Movant was a party to the shooting of
the first person shot at the scene. (There was direct evidence that
Movant himself shot the second person at the scene.) Proving that
Movant was one who "aided , counseled, solicited, encouraged, or
abetted the commission of the offense" of the first murder was
indispensable to proving that Movant was guilty of capital murder,
since the capital circumstance was the killing of two people in a
single transaction.

> As Appellant, Movant presented a Motion for Rehearing and a
> Further Motion for Rehearing, noting that the purported
> testimony of Albino Garcia was not in the record.  Committed
> to its decision made without reading the record, the Court of
> Criminal Appeals of Texas responded to the motions for
> rehearing by merely deleting reference to the phantom
> "testimony " of Albino Garcia and reiterating its opinion.
> This summary reiteration without reading the record  was
> another instance of the denial of meaningful appellate review.

> The same process , and the same denial, was duplicated with
> the review of the factual sufficiency of the evidence by the
> Court of Criminal Appeals of Texas. (Texas has a separate
> review of the factual sufficiency of the evidence with a
> standard separate from the Jackson standard.
> Elbert Clewis v. State, 922 S.W.2d 126(Tex. Crim. App.  1996)

The legal basis for this ground was unavailable to Applicant when
he filed his original Application for Habeas Corpus pursuant to
TEX.CODE CRIM.PROC.art.11.071.   At the time Applicant's direct
appeal was heard,no Texas decision had ever allowed one to recuse
an entire court. At the time Applicant's original application for
habeas corpus pursuant to TEX.CODE CRIM.PROC. 11.071 was filed,no
Texas decision had ever allowed one to recuse an entire court.  At
the time Applicant's original application for habeas corpus
pursuant to TEX.CODE CRIM.PROC. 11.071 was determined,no Texas
decision had ever allowed one to recuse an entire court.

## GROUND FOR RELIEF NUMBER 4

Movant's Appeal was heard by a biased court, the Court of
Criminal Appeals of Texas.
The Court of Criminal Appeals of Texas did not read the
record.  Instead, it merely adopted in to the State's summary
of the testimony of the witnesses.  In evaluating the legal
sufficiency of the evidence, rather than independently reading
the record, the Court of Criminal Appeals of Texas

specifically   relied   in   its   written   opinion   on   the   State's
summary   of   the   evidence   of   the   testimony   of   Albino   Garcia.
However,   Albino   Garcia   never   testified.

The   "testimony"   of   the   witness   who   never   testified,   Albino
Garcia,   was   critical.   Albino   was   supposed   to   testify   that
Movant   had   the   gun   the   night   before   the   crime.   Movant's
having   the   gun   the   night   before   the   crime   and   showing   it   off,
was   necessary   to   support   the   inference   that   Movant   supplied
the   gun   to   the   co-actor,   Chris   Quiroz.   This   connection
between   Quiroz   and   Movant   was   necessary   to   support   the
inference   that   Movant   was   a   party   to   the   shooting   of   the   first
person   shot   at   the   scene.   (There   was   direct   evidence   that
Movant   himself   shot   the   second   person   at   the   scene.)   Proving
that   Movant   was   one   who   "aided   ,   counseled,   solicited,
encouraged,   or   abetted   the   commission   of   the   offense"   of   the
first   murder   was   indispensable   to   proving   that   Movant   was
guilty   of   capital   murder,   since   the   capital   circumstance   was
the   killing   of   two   people   in   a   single   transaction.
As   Appellant,   Movant   presented   a   Motion   for   Rehearing   and   a
Further   Motion   for   Rehearing,   noting   that   the   purported
testimony   of   Albino   Garcia   was   not   in   the   record.   Committed
to   its   decision   made   without   reading   the   record,   the   Court   of
Criminal   Appeals   of   Texas   responded   to   the   motions   for
rehearing   by   merely   deleting   reference   to   the   phantom
"testimony   "   of   Albino   Garcia   and   reiterating   its   opinion.
This   summary   reiteration   without   reading   the   record   was
another   instance   of   the   denial   of   meaningful   appellate   review.
The   same   process,   and   the   same   denial,   was   duplicated   with   the
review   of   the   factual   sufficiency   of   the   evidence   by   the   Court
of   Criminal   Appeals   of   Texas.   (Texas   has   a   separate   review   of
the   factual   sufficiency   of   the   evidence   with   a   standard
separate   from   the   Jackson   standard.
Elbert   Clewis   v.   State,   922   S.W.2d   126(Tex.   Crim.   App.   1996)

The   Court   of   Criminal   Appeals   of   Texas   was   the   "patently
biased   judge"   mentioned   by   Justice   Scalia   in   **Mayberry   v.
Pennsylvania**,   400   U.S.   455,465-466,   27   L.   Ed.   2d   532,   91   S.
Ct.   499   (1971))

The   bias   was   "patent"   because   the   Court's   decision   was   not
based   on   the   evidence(the   record)   but   rather   on   the   wholesale
acceptance   by   the   Court   of   the   prosecution's   rendition   of   the
facts   in   the   prosecution's   brief   as   to   what   the   evidence   was
at   trial   rather   than   on   the   record   itself   before   the   Court   of
the   evidence.

The   bias   was   patent,   because,   as   noted   above   ,   the   Court   of

21

Criminal Appeals of Texas based its initial decision on phantom "evidence" which that very Court cited as the basis for its decision that was not in the record , that existed only in the summary of the "evidence" offered by the prosecution, and which the Court of Criminal Appeals ofTexas adopted wholesale without reading the record before that Court precisely because it was predisposed to favor one litigant (the prosecution) over another (Petitioner as Appellant) without regard to the evidence.

The legal basis for this ground was unavailable to Applicant when he filed his original Application for Habeas Corpus pursuant to TEX.CODE CRIM.PROC.art.11.071.  At the time Applicant's direct appeal was heard,no Texas decision had ever allowed one to recuse an entire court. At the time Applicant's original application for habeas corpus pursuant to TEX.CODE CRIM.PROC. 11.071 was filed,no Texas decision had ever allowed one to recuse an entire court.  At the time Applicant's original application for habeas corpus pursuant to TEX.CODE CRIM.PROC. 11.071 was determined,no Texas decision had ever allowed one to recuse an entire court.

GROUND FOR RELIEF NUMBER 5

Petitioner was deprived of his right under Edwards v. Arizona because he demanded a lawyer at the line-up and was denied one.  After his demand for the lawyer at the line-up was refused, a suggestive line-up was conducted.

Here the factual basis for the writ was "unavailable" to the Applicant because he was in the custody of the state and subject to severe restrictions on his communications with his attorneys: he had to do that by mail. The basis for the claim that the line-up was tainted was effectively unavailable to Applicant because he could not communicate with his writ attorney. That impediment to communication was the fault of the Respondent, who had him in custody.

GROUND FOR RELIEF NUMBER 6

Petitioner was deprived of  effective assistance of counsel at trial because the trial attorney did not pursue the claim that Appellant had been denied counsel at the line-up even though the Appellant had demanded to have a lawyer at the line-up. It does not matter that Petitioner had not been formally charged at the line-up, since the investigation had focused on the Petitioner at the time of the line-up.

GROUND FOR RELIEF NUMBER 7

Petitioner was deprived of effective assistance of counsel on

22

appeal because the counsel on appeal did not separately brief his complaints of the factual and of the legal sufficiency of the evidence.      Instead,   he   briefed   them   together. Consequently,   the Court of Criminal Appeals did not review the factual sufficiency of the evidence.    If the Court of Criminal Appeals had reviewed the factual sufficiency of the evidence,   it would have awarded a new trial,   since the evidence was factually insufficient to support the premise that Petitioner was responsible for the first murder.

The legal basis for this ground was "unavailable" to applicant at the time the writ was filed because the state writ counsel was ineffective.   State law required (at the time) the Court of Criminal Appeals to appoint competent counsel to do the state writ.   State writ counsel was ineffective for failing to know and recognize the importance of the **Clewis** factual sufficiency issue and the rule requiring separate briefing of factual and legal issues.

It is a violation of federal due process for a state not to follow its own law.   Dissenters at the Court of Criminal Appeals have held that the Court of Criminal Appeals effectively denied capital litigants due course of law by appointing counsel who missed AEDPA filing deadlines. Denying Applicant state writ counsel competent to recognize and present the issues on the original 11.071 writ similarly denies him competent counsel by its own terms. The Court of Criminal Appeals should determine that such failure   deprives   one   so   situated   of   due   course   of   law. TEX.CONST.art.I,   secs.13 and 19.   The Court of Criminal Appeals should hold that the failure of the Court to appoint competent counsel on the state writ made this ground legally unavailable by depriving Applicant of state due course of law. TEX.CONST.art.I, secs.13 and 19

Federal courts reviewing this matter should determine that the ground was legally unavailable because the state failed to follow its own law requiring it to appoint counsel competent to recognize and preserve cogent issues virtually certain to gain a new trial [The   evidence   was   factually   insufficient   to   prove   Appellant responsible for the act of the person who shot the first parent. If the state failed to provide factually sufficient evidence to show such responsibility, Appellant would be awarded a new trial under state law.]   The state's failure to follow its own law (requiring appointment of competent counsel) deprived Applicant [Movant in federal court] of his liberty, and, impendingly, his life, without due course of law. U.S.CONST.amend.XIV.

GROUND FOR RELIEF NUMBER 8
Petitioner was deprived of effective assistance of counsel on appeal when Appellate counsel did not tell State Writ counsel

23

that Petitioner had told State Appellate counsel that
Petitioner had demanded a lawyer at line-up.


The legal basis for this ground was "unavailable" to applicant
at the time the writ was filed because the state appellate counsel
was ineffective.

Applicant swears, and state appellate counsel does not deny,
that Applicant as Appellant told state appellate counsel that
Applicant had told trial counsel that Applicant as arrestee had
demanded a lawyer at the lineup, indeed that he had previously
hired attorney Abel Toscano to represent him in another matter,
that Attorney Toscano had posted bail for him in that other matter,
a dwi, that Applicant was in custody at the time of the line up on
a bond surrender for the dwi, and that the investigation had so
focused on Applicant at the time of the line up that Abel Perez had
written on the blackboard near where the lineup was held, "Jesus
Ledezma Aguilar, suspect, capital murder" before the lineup was
held.

State appellate counsel took it upon himself not to relay this
information to state writ counsel, deciding that if the matter had
not been raised at trial, it could not be effectively presented on
a state writ.

State appellate counsel had a duty to appellant and to the
Court to seek appointment of state writ counsel. The import of this
duty is that state appellate counsel also relay to state writ
counsel all viable grounds for relief. Here, the ground for relief
was that state trial counsel was ineffective for failing to raise
the **Edwards** lineup issue, especially in the light of the
uncontroverted claim that Applicant had hired Attorney Toscano to
represent Applicant on the matter (a dwi bond forfeiture) for which
he was in custody at the time of the lineup in the capital case.

The lineup is critical in the identification process. The
tainted lineup affected the later photo id by the child-witness.

The basis for this claim was legally unavailable at the time
the first state writ was filed because state appellate counsel was
ineffective in not recognizing and communicating to state writ
counsel that state trial counsel had been ineffective in not
preserving the point.


State law required (at the time) the Court of Criminal Appeals to
appoint competent counsel to do the state writ. State writ counsel
was ineffective for failing to know and recognize the importance of
the **Clewis** factual sufficiency issue and the rule requiring
separate briefing of factual and legal issues.

It is a violation of federal due process for a state not to
follow its own law.  Dissenters at the Court of Criminal Appeals
have held that the Court of Criminal Appeals effectively denied

24

capital litigants due course of law by appointing counsel who missed AEDPA filing deadlines. Denying Applicant state writ counsel competent to recognize and present the issues on the original 11.071 writ similarly denies him competent counsel by its own terms. The Court of Criminal Appeals should determine that such failure deprives one so situated of due course of law. TEX.CONST.art.I, secs.13 and 19. The Court of Criminal Appeals should hold that the failure of the Court to appoint competent counsel on the state writ made this ground legally unavailable by depriving Applicant of state due course of law. TEX.CONST.art.I, secs.13 and 19

Federal courts reviewing this matter should determine that the ground was legally unavailable because the state failed to follow its own law requiring it to appoint counsel competent to recognize and preserve cogent issues virtually certain to gain a new trial [The evidence was factually insufficient to prove Appellant responsible for the act of the person who shot the first parent. If the state failed to provide factually sufficient evidence to show such responsibility, Appellant would be awarded a new trial under state law.] The state's failure to follow its own law (requiring appointment of competent counsel) deprived Applicant [Movant in federal court] of his liberty, and, impendingly, his life, without due course of law. U.S.CONST.amend.XIV.

14. Do you have any Petition or Appeal now pending in any Court as to the judgment under attack? No. However, in **Aguilar v. Johnson**, B 99 044 (USDC, SDTX June 20, 2000) the United States District Court dismissed the Motion to Vacate without prejudice to refile the same, provided that Petitioner (Applicant here) file a subsequent state application within sixty days of appointment of counsel by state court to do so. On June 27, 2000 the 107th District Court of Cameron County appointed Mr. Warner to do so. This subsequent application is timely filed in accord with that appointment.

15. Attorneys below:
    A.    At preliminary hearing: H o n .   A l f r e d o Padilla, 1000    Van Buren, Brownsville, Texas 78520

B.    Arraignment of plea:          Hon. Alfredo Padilla,1000 Van Buren, Brownsville, Texas 78520

C.    At trial:                     Hon. Alfredo Padilla,1000 Van Buren, Brownsville, Texas 78520

D.    At sentencing:                Hon. Nat Perez, 845 E. Harrison, Brownsville, Texas 78520

E.    On appeal:                    Hon. Rene Gonzalez,1718 Boca Chica Blvd.,P. O. Box 5134, Brownsville, Texas 78523-5134

F.    In any post-conviction  Proceeding:
                                    Hon. Mark Alexander, Attorney at Law,804 Pecan, Mcallen, Texas 78501.

G.    On appeal from any  adverse ruling in a post-conviction proceeding:          Hon. Mark Alexander, Attorney at
                                    Law,804 Pecan, Mcallen, Texas 78501.

H.    On Petition for Writ of Certiorari:
                                    Hon. Michael B. Charlton, 4515 Yoakum, Houston, Texas 77006

16.   Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same Court and at the same time? **No**.

26

17.   Do you have any future sentence to serve after
      you complete the sentence imposed by the
      judgment under attack? **No**.

    (A)   If so, give name and location of Court which
          imposed sentence to be served in the future:
          **Inapplicable**.

        (B)   And give date and length of sentence to be
              served in the future: **Inapplicable**.

    (C)   Have you filed, or do you contemplate filing, any
          Petition attacking the judgment which imposed the
          sentence to be served in the future? **No**.

Wherefore, Petitioner prays that the Court grant Petitioner
relief to which he may be entitled in this proceeding.

RESPECTFULLY SUBMITTED,

_____
Larry Warner-Attorney At Law

I declare (or certify, verify, or state) under penalty of
perjury that the foregoing is true and correct.   Executed
on:_____,2000.

_____
Larry Warner-Attorney At Law
777 E. Harrison Street, 2nd Floor
Brownsville, Texas 78520
(956) 542-4784 * (956) 544-5234 fax
State Bar #20871500

**RETURNABLE TO THE
COURT OF CRIMINAL APPEALS OF TEXAS
CAUSE NO. 95-CR-1088-A**

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR, | § | IN THE 107TH DISTRICT COURT |
| APPLICANT | § | CAMERON COUNTY, TEXAS |
| | § | |
| VS. | § | USDC, SD TX, BROWNSVILLE |
| | § | CIVIL NO.  B-99-044 |
| GARY JOHNSON, DIRECTOR OF THE | § | **CAPITAL LITIGANT** |
| INSTITUTIONAL DIVISION OF THE | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE,   and | § | TEX.CRIM.APP.36,142-01(11.071) |
| ATTORNEY GENERAL OF THE STATE | § | |
| OF TEXAS, | § | |
| RESPONDENTS | § | TEX.CRIM.APP.72,470 |
| | | (Direct Appeal) |

### VERIFICATION

BEFORE ME, the undersigned authority, on this day personally appeared LARRY WARNER, known to me as a credible person, and fully qualified to make this verification, and who, after first being by me duly sworn, upon his oath deposes and says: that he/she is the Attorney for Petitioner in the above-styled and foregoing **Post Conviction Application for Writ of Habeas Corpus Pursuant to Tex. Code Crim.Proc. 11.071; Subsequent Application**; and that the facts and allegations contained therein are true and correct with his personal knowledge and upon his information and belief.

_____
LARRY WARNER

SUBSCRIBED AND SWORN TO before me on this 24th day of August, 2000.

_____
NOTARY PUBLIC in and for the State of Texas
Notary's Printed Name:DIANA F. CONNER
My Commission Expires: 06-09-02

RETURNABLE TO THE
COURT OF CRIMINAL APPEALS OF TEXAS

CAUSE NO. 95-CR-1088-A

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR, | § | IN THE 107TH DISTRICT COURT |
| APPLICANT | § | CAMERON COUNTY, TEXAS |
| | § | |
| VS. | § | USDC, SD TX, BROWNSVILLE |
| | § | CIVIL NO.  B-99-044 |
| GARY JOHNSON, DIRECTOR OF THE | § | **CAPITAL LITIGANT** |
| INSTITUTIONAL DIVISION OF THE | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE,    and | § | TEX.CRIM.APP.36,142-01(11.071) |
| ATTORNEY GENERAL OF THE STATE | § | |
| OF TEXAS, | § | |
| RESPONDENT | § | TEX.CRIM.APP.72,470 |
| | | (Direct Appeal) |

## CERTIFICATE OF SERVICE

I, Larry Warner, certify that I mailed a true and correct copy
of **POST CONVICTION APPLICATION FOR WRIT OF HABEAS CORPUS, PURSUANT
TO TEX. CODE CRIM.PROC. 11.071; SUBSEQUENT APPLICATION** the document
to which this certificate is attached to:

YOLANDA DE LEON, DISTRICT ATTORNEY,974 E.  HARRISON ST.,
BROWNSVILLE, TEXAS  78520
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

HON. JOHN CORNYN, ATTORNEY GENERAL FOR THE STATE OF TEXAS,
P.O. BOX 12548, CAPITAL STATION, AUSTIN, TX  78711
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

HON. KATHERINE D. HAYES, ASST. ATTORNEY GENERAL FOR THE  STATE
OF TEXAS, P.O. BOX 12548, CAPITAL STATION, AUSTIN,  TEXAS
78711-2548.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STATE PROSECUTING ATTORNEY, P.O.BOX 12405, CAPITOL STATION,
AUSTIN, TEXAS  78711

by U.S. Postal Service this 24th  day of August, 2000

_____
Larry Warner

29

RETURNABLE TO THE
COURT OF CRIMINAL APPEALS OF TEXAS

CAUSE NO. 95-CR-1088-A

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR, APPLICANT | § § § | IN THE 107TH DISTRICT COURT CAMERON COUNTY, TEXAS CAUSE NO. 95-CR-1088-A |
| VS. | § § § | (USDC, SD TX, BROWNSVILLE CIVIL NO.  B-99-044 **CAPITAL LITIGANT**) |
| GARY JOHNSON, DIRECTOR OF THE INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE,   and ATTORNEY GENERAL OF THE STATE OF TEXAS, RESPONDENTS | § § § § § § | (TEX.CRIM.APP.36,142-01(11.071) (TEX.CRIM.APP.72,470 (Direct Appeal) |

**AFFIDAVIT OF JESUS LEDESMA AGUILAR
IN SUPPORT OF POST CONVICTION SUBSEQUENT APPLICATION FOR HABEAS
CORPUS**

**AFFIDAVIT OF ATTORNEY RENE GONZALEZ**

**AFFIDAVIT IN SUPPORT OF POST CONVICTION APPLICATION FOR WRIT OF
HABEAS CORPUS PURSUANT TO TEX. CODE CRIM.PROC. 11.071; SUBSEQUENT
APPLICATION**

30

**RETURNABLE TO THE**
**COURT OF CRIMINAL APPEALS OF TEXAS**

| | | |
|---|---|---|
| EX PARTE | § | POST-CONVICTION SUBSEQUENT |
| | § | APPLICATION FOR HABEAS CORPUS |
| | § | |
| | § | CAUSE NO. 95-CR-1088-A |
| | § | |
| | § | IN THE 107TH DISTRICT COURT |
| | § | |
| JESUS LEDESMA AGUILAR | § | CAMERON COUNTY, TEXAS |

**AFFIDAVIT IN SUPPORT OF POST CONVICTION**
**SUBSEQUENT APPLICATION FOR HABEAS CORPUS**

**AFFIDAVIT**

BEFORE ME, THE UNDERSIGNED AUTHORITY, PERSONALLY APPEARED JESUS LEDESMA AGUILAR, KNOWN TO ME TO BE THE PERSON WHOSE NAME IS SUBSCRIBED BELOW, AND UPON BEING DULY SWORN HE DEPOSED AND SAID:

"MY NAME IS JESUS LEDESMA AGUILAR,    I AM THE PETITIOINER IN THE ABOVE-ENTITLED AND NUMBERED CAUSE. I AM OVER THE AGE OF 18, OF *SOUND MIND AND COMPETENT IN ALL RESPECTS TO MAKE  THIS AFFIDAVIT.*

I HAVE PERSONAL KNOWLEDGE OF THE FACTS STATED HEREIN.

My name is JESUS LEDESMA AGUILAR I am the Petitioner, I am the Applicant in this Post Conviction Subsequent Application for Habeas Corpus, Cause No. 95-CR-1088-A.

At the lineup held on June 21, 1995, I was the only person in the lineup in a white jump suit.  All the other persons who were part of the lineup had blue jump suits.  Additionally, one of the persons who was in the lineup was a white man.  He was placed next to me in the lineup.

Before the trial, I told my trial lawyer, Mr. Alfredo Padilla, that at the lineup I had told Deputy Abel Perez that I wanted a lawyer before the lineup began.

During the appeal process, before my appellate brief was

1

filed, I told my appellate lawyer, Mr. Rene Gonzalez, that at the lineup of June 21, 1995, I had told Deputy Abel Perez that I wanted a lawyer before the lineup began.  Attorney Rene Gonzalez told me that the matter had not been brought up at the trial and that, consequently, it could not be effectively be presented on appeal.

I did not find out who my State Writ Lawyer (Attorney Mark Alexander, of McAllen, Texas) was until after Mr. Alexander had already filed my first 11.071 Writ Application in State Court.

On July 26, 1996, the trial court made findings of fact, determining that an attorney should be appointed to file an application for a writ pursuant to TEX. R. CRIM. P. 11.071.

On March 19, 1997, Attorney Mark Alexander was actually appointed to file an application for a writ pursuant to TEX. R. CRIM. P. 11.071.

On August 8, 1997 I learned  that  Mr. Alexander had been appointed ;
Mr Gonzalez told me that  Mr. Alexander had been appointed.

On August 17, 1997  Attorney Gonzalez' letter arrived and informed  me  of  Mr. Alexander's address.


Between 8 17 97 and 9 9 97 I  wrote letters to Mr. Alexander informing him of my having told Abel Perez that I wanted a lawyer on June  , 1995 at the Sheriff's Office before the lineup.   (With the Court's leave, Applicant will supplement this application with true copies  of the letters to Attorney Alexander.)

JESUS LEDESMA AGUILAR

**SUBSCRIBED AND SWORN** before me, by the said Jesus Ledesma Aguilar this the 2?  day of June, 2000, to certify which witness my hand and official seal.

Richard McKee

NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS-Commission Exp: 5-23-0?

2

My name is Rene B. Gonzalez. I was the attorney for Jesus Ledesma Aguilar on the direct appeal from the conviction for capital murder in cause number 95 CR 1 2 A in the 107th Judicial District Court of Cameron County, Texas. On direct appeal, I challenged the legal and factual sufficiency of the evidence to support the defendant's conviction in this cause. In the appellate brief, which I prepared and filed for Mr. Aguilar, I combined the arguments challenging the legal and factual sufficiency of the evidence. The Court of Criminal Appeals held that because I argued both of these points together, and I did not sufficiently differentiate the law, the Court would address only the attack on the legal sufficiency of the evidence.

I had previously, in other appeals, combined related points of error under a single argument. To the best of my recollection, the Corpus Christi Court of Appeals had never ruled that by so doing I had waived one of my points of error. Therefore, I was under the mistaken assumption that I could also do so in the Court of Criminal Appeals. Had I known that the Court of Criminal Appeals would so rule, I would have argued each of the points separately in the brief.

in my professional opinion
I ~~totally believe~~ that the ~~facts~~ evidence presented
in cause number 95-CR-1088-A was "factually
insufficient" to support the defendant's conviction.

If this challenge to the factual sufficiency of the
evidence had been properly briefed and considered by the
Court of Criminal Appeals, it ~~is~~ is my opinion that the
defendant would have ~~probably~~ ~~received~~ received a new trial

Rene B. [signature]
6-2-00

RETURNABLE TO THE
COURT OF CRIMINAL APPEALS OF TEXAS

CAUSE NO. 95-CR-1088-A

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR, | § | IN THE 107TH DISTRICT COURT |
| APPLICANT | § | CAMERON COUNTY, TEXAS |
| | | CAUSE NO. 95-CR-1088-A |
| | § | |
| VS. | § | (USDC, SD TX, BROWNSVILLE |
| | § | CIVIL NO.  B-99-044 |
| GARY JOHNSON, DIRECTOR OF THE | § | **CAPITAL LITIGANT**) |
| INSTITUTIONAL DIVISION OF THE | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE,   and | § | (TEX.CRIM.APP.36,142- |
| | | 01(11.071)) |
| ATTORNEY GENERAL OF THE STATE | § | |
| OF TEXAS, | § | |
|        RESPONDENTS | § | (TEX.CRIM.APP.72,470 |
| | | (Direct Appeal)) |

---

**AFFIDAVIT IN SUPPORT OF POST CONVICTION APPLICATION
FOR WRIT OF HABEAS CORPUS PURSUANT TO TEX. CODE
CRIM.PROC. 11.071; SUBSEQUENT APPLICATION**

---

State of Texas
County of Cameron

Before me, the undersigned, appeared this day Larry Warner, well
known to me, who, being sworn, upon his oath deposed and said:

"My name is Larry Warner.  I am an attorney admitted to practice
before the Supreme Court of the United States and the Supreme Court
of Texas.  I am attorney for Applicant.

The annexed statement of attorney Rene Gonzalez was written by attorney Rene Gonzalez in my presence.   This is the same attorney Rene Gonzalez who served as state appellate counsel for Appllicant as Appellant in (TEX.CRIM.APP.72,470(Direct Appeal)cited in the caption of this Application.  Attorney Rene Gonzalez first told me that all the things to be written in the declaration were true. Then he wrote those same things down in the document annexed to this affidavit.

I have been unable to reach him to get him to sign an affidavit containing the identical averments contained in the document annexed to this affidavit. Attorney Gonzalez has indicated he would sign one, but we have both been so busy we have not been able to complete that task.

With the Court's leave, I will supplement the Application with such an affidavit.

Further affiant sayeth not.

                         Subscribed  and  sworn  this  August  24,
2000.


                    Larry Warner

Subscribed and sworn this August 24, 2000 before me by the said Larry Warner.


                    Notary Public
                    State of Texas
                    Diana Fuentes Conner
                    Commission expires 6 9 2002