IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 21 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| JESUS LEDESMA AGUILAR, § | |
| Petitioner, § | |
| § | |
| V. § | |
| § | |
| JANIE COCKRELL, DIRECTOR OF § | CIVIL NO. B-01-195 |
| THE INSTITUTIONAL DIVISION OF § | |
| THE TEXAS DEPARTMENT OF § | |
| CRIMINAL JUSTICE, and § | |
| ATTORNEY GENERAL OF THE § | |
| STATE OF TEXAS § | |
| ADDITIONAL RESPONDENT § | |

### REPLY TO RESPONDENT'S ANSWER AND MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR AN EVIDENTIARY HEARING TO DETERMINE UNRESOLVED FACTS

Jesus Ledesma Aguilar, Petitioner, hereby incorporating all prior post-conviction applications and pleadings for writ of habeas corpus filed in this matter by reference, respectfully submits his response to the Respondents' Answer and Motion for Summary Judgment in the above-entitled cause, by his attorney, David K. Sergi, as follows:

### EXHAUSTION OF STATE REMEDIES

Petitioner, Jesus Ledesma Aguilar, has exhausted all of his available state remedies as to each and every ground raised for federal habeas relief in both his original federal habeas petition filed in November 2001 and in his supplemental federal habeas petition filed in March 2002.

Respondent, Cockrell, concedes to this Court in its Answer and Motion for Summary Judgment that Aguilar has sufficiently exhausted his state remedies with regard to the claims in his original habeas petition filed in November 2001. Regarding the allegations contained in Petitioner's

supplemental federal writ filed in March 2002,[1] Respondent argues that Aguilar has failed to exhaust his state remedies and that these supplemental allegations are therefore unexhausted.[2] Respondent's belief is incorrect.

Specifically, Respondent claims that these particular allegations of the denial of effective assistance of counsel on direct appeal were not presented to the state court for review. A review of the court records indicates that this specific issue was indeed presented to the state court as Ground for Relief Number 7 in Aguilar's Subsequent Application for Habeas Corpus filed pursuant to Article 11.071 of the Texas Code of Criminal Procedure.[3] Additionally, the state habeas court issued an "Order on Applicant's Second Application for Writ of Habeas Corpus" which verbatim and specifically addresses the merits of denial of effective assistance of counsel on direct appeal that are

---

[1] Respondent is correct that Aguilar's supplemental federal writ of March 2002 contains a typographical reference to "Grounds for Relief No. 8" when, in fact, the supplement is to "Grounds for Relief No. 18." It is the intent of Petitioner to combine all instances of ineffective assistance of the direct appeal counsel into one ground for federal relief, specifically, "Ground for Relief No. 18."

[2] See Respondent's Answer and Motion for Summary Judgment at page 5.

[3] Petitioner's Subsequent State Application for Habeas Corpus is contained within this court's records. Said subsequent state writ was attached as an exhibit to Petitioner's Original Petition in this federal cause. Ground for Relief Number 7, found on page 22-23 of said exhibit, specifically states as follows:

> Petitioner was deprived of effective assistance of counsel on appeal because the counsel on appeal did not separately brief his complaints on the factual and on the legal sufficiency of the evidence. Instead, we briefed them together. Consequently, the Court of Criminal Appeals did not review the factual sufficiency of the evidence. If the Court of Criminal Appeals had reviewed the factual sufficiency of the evidence, it would have awarded a new trial, since the evidence was factually insufficient to support the premise that Petitioner was responsible for the first murder.

raised in Aguilar's supplemental federal writ filed in March 2002.[4] Since the crux of the supplemental allegation is ineffective assistance of direct appeal counsel, a state writ was the only available remedy prior to this federal application for relief. Therefore, Aguilar has also exhausted his state remedies regarding the allegations raised in his supplemental federal writ filed in March 2002.

## ERROR AND PREJUDICE IN THE SHACKLING AND HANDCUFFING OF AGUILAR IN FRONT OF JURY

Respondent claims that Aguilar has failed to demonstrate error or prejudice, thereby causing his first claim, a claim which pertains to being repeatedly shackled during trial in front of the jurors, to fail. Such a determination is premature and requires an unreasonable determination of relevant facts without an adequate evidentiary basis upon which this court can apply the applicable federal law. At a minimum, an evidentiary hearing should be held to determine the extent this shackling prejudiced the jurors.

The leading Supreme Court case on shackling during trials is *Illinois v. Allen*, 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970). In *Allen*, the court wrote that "no person should be tried while shackled and gagged except as a last resort" because of the distinct possibility of "a significant effect on the jury's feelings about the defendant." *Id.* at 344. A similar view has been expressed by the Supreme Court in *Estelle v. Williams*, 425 U.S. 501, 504-05, 48 L. Ed. 2d 126, 96 S. Ct. 1691 (1976), wherein the court found that a defendant wearing prison clothes in front of the jury is a constant reminder of an accused's condition implicit in such distinctive, identifiable attire and as such may affect a juror's judgment.

---

[4] See Exhibit 1 wherein paragraph 4 of the state habeas court's order cursorily addresses the merits of Aguilar's allegation of ineffective assistance of his direct appeal attorney, Rene Gonzalez, for failing to separately brief the sufficiency of the evidence issue in the direct

As the Supreme Court developed in *Holbrook v. Flynn,* 475 U.S. 560, 568-69, 89 L. Ed. 2d 525, 106 S. Ct. 1340 (1986), shackling, like prison clothes, is an indication of the need to separate a defendant from the community at large, creating an inherent danger that the jury may form the impression that the defendant is dangerous or untrustworthy. Therefore, "in the presence of the jury, [the defendant] is ordinarily entitled to be relieved of handcuffs, or other unusual restraints, so as not to mark him as an obviously bad man or to suggest that the fact of his guilt is a foregone conclusion." *Rhoden v. Rowland,* 172 F.3d 633, 636-637 citing Stewart v. Corbin, 850 F.2d 492, 497 (9th Cir. 1988) (internal quotations omitted) (citation omitted).

The extent of a defendant's shackling, as well as the duration of the juror's observation of this shackled defendant, are facts necessarily before a court in its determination of actual prejudice suffered by a particular defendant. Federal habeas relief has been found to be warranted where a defendant was shackled and observed by the jurors in his shackled condition. *See e.g. Duckett v. Godinez,* 67 F.3d 734, 747-49 (9th Cir. 1995) (the court recognized that visible restraints during a jury sentencing hearing would likely have prejudiced the defendant); *Elledge v. Dugger,* 823 F.2d 1439, 1450-52 (11th Cir. 1987) (where the Eleventh Circuit held that habeas relief was warranted where unjustified shackles were not obtrusive, but were visible and actually seen by some of the jurors); *Tyars v. Finner,* 709 F.2d 1274, 1284-85 (9th Cir. 1983) (unjustified restraints during involuntary commitment proceedings that were visible to the jury were inherently prejudicial); and *Rhoden v. Rowland,* 172 F.3d 633 (9th Cir. 1999) (where the jury did see the shackles, and because the case involves violent crimes and the evidence was disputed, court held that the trial court's error substantially influenced the jury's verdict).

Likewise, courts have held that prejudice was lacking in situations less onerous. For instance, a jury's brief or inadvertent glimpse of a defendant in physical restraints outside of the courtroom has not warranted habeas relief. *See United States v. Olano,* 62 F.3d 1180, 1190 (9th Cir. 1995); *United States v. Halliburton,* 870 F.2d 557, 560-61 (9th Cir. 1989); *Wilson v. McCarthy,* 770 F.2d 1482, 1485-86 (9th Cir. 1985). The defendants in those cases did not demonstrate that they suffered actual prejudice. *See Olano,* 62 F.3d at 1190; *Halliburton,* 870 F.2d at 561.

The Fifth Circuit Court of Appeals has long held that, in order to readily determine whether an abuse of discretion is shown by a federal trial court in utilizing unusual visible security measures (such as shackling a defendant) before a jury, the district judge shall state for the record, outside the jury's presence, the reasons for such action. *United States v. Theriault,* 531 F.2d 281, (5th Cir. 1976). Aguilar asserts through the affidavit of his trial attorney that he was repeatedly shackled in front of the jury during his trial. Aguilar's state court trial record does not contain evidence to the contrary, nor does Respondent provide evidence to the contrary in its answer. No specific findings by the trial court appear in the record justifying the use of restraints on Aguilar during his trial to be reviewed for abuse of the court's discretion. Error occurred when Aguilar was shackled during his trial in front of the jurors without any specific finding as to necessity for the shackling.

To determine prejudice caused by this error, the question before this Court is whether the shackling "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 123 L. Ed. 2d 353, 113 S. Ct. 1710, 1714 (1993). If this Court is in "grave doubt" whether the error affected the verdict, the error is not harmless. *O'Neal v. McAninch,* 130 L. Ed. 2d 947, 115 S. Ct. 992, 994 (1995). The risk of doubt, however, is on the State. *Duckett, id. citing O'Neal v. McAninch,* 130 L. Ed. 2d 947, 115 S. Ct. at 966 (1995) (rejecting language in *Brecht v.*

*Abrahamson* which places on defendant burden of showing prejudice). Where the record does not reflect how onerous the shackles were, or the extent to which they were visible to the jury, the record is inadequate to make a determination that the error of shackling prejudiced Aguilar. In such a situation, an evidentiary hearing on the issue of prejudice is warranted. *See Rhoden v. Rowland,* 10 F.3d at 1460 (remanding for evidentiary hearing where record not properly developed on issue of prejudice caused by shackling); *See also Duckett v. Godinez,* 67 F.3d 734 (9th Cir. 1995) (remanding to district court for an evidentiary hearing on issue of prejudice due to the inadequacy of the record, where court could not conclude without "grave doubt" that, absent the error of shackling Duckett, the jury would not have sentenced Duckett to life *with* the possibility of parole, an option which was available).

Respondent alternately asserts that relief on this claim has been procedurally defaulted by Aguilar as the trial record does not contain a specific objection to Aguilar's shackling. The affidavit of Aguilar's trial counsel specifically states that he requested that Aguilar *not* be shackled, but instead the shackles remained on his client throughout his trial. Trial counsel has stated under oath that a timely request was made to the court in the course of the trial, thereby otherwise raising the error in the trial court. *Mercado v. State,* 718 S.W.2d 291 (Tex. Crim. App. 1986).

### DENIAL OF APPOINTMENT OF PATHOLOGIST AND BALLISTICS EXPERT TO ASSIST THE DEFENSE AT TRIAL

Respondent contends that Aguilar has failed to show prejudice in not having the assistance at trial of a court-appointed pathologist and ballistics expert.

In *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 10887, 84 L.Ed.2d 53 (1985), the Supreme Court held that three factors are relevant considerations in determining in what instances expert assistance

should be afforded to an indigent criminal defendant[5]. In a capital murder trial, an individual's interests significantly outweigh the interests of the State. *Ake* at 78. The third consideration is the threshold consideration in the analysis. *Ake* holds that a defendant must make a preliminary showing that the issue subject to expertise is "likely to be a significant factor" at trial. *Id* at 74. *Ake* dealt with the issue of psychiatric expert assistance, but the courts have held that *Ake* is not limited to psychiatric experts, but that the nature of an expert's field and the importance and complexity of the issue will bear directly upon whether the appointment of an expert will be helpful. *Little v. Armontrout*, 835 F.2d 1240 (8th Cir. 1987).

Aguilar has stated in his petition that a pathologist was necessary to assist in his defense to explain the findings of the autopsy report. Aguilar was unable to investigate the issues surrounding a blood-splatter analysis of the crime scene without an independent pathologist appointed as a defense expert. This information could have proven to be exculpatory where more than one individual was involved in the shootings, as was the alleged case here. Furthermore, testimony was provided at the trial regarding the execution style of the killing of the two victims—extremely aggravating in light of the theory of future danger the state presented to the jury based on allegations that Aguilar was a member of a dangerous gang known as the "Texas Syndicate." This testimony further corroborated the aggravating factors argument of the prosecutor for the death penalty that this was a calculated, cold crime by an individual who was experienced in execution-style killings.

---

[5] The first factor is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. *Id.*

Denial of the assistance of an expert pathologist for the defense violated Aguilar's federal due process rights.

As to the denial of a ballistic expert, Aguilar was similarly hindered in preparing and presenting his defense without a ballistic expert. Expert assistance is helpful in situations where expert findings are inaccurate or subject to disagreement between experts. *Moore v. Kemp,* 809 F.2d 702 (11th Cir. 1987). The testimony of the ballistics expert who testified for the state was unable to identify the weapon or exclude it as the murder weapon at trial. See ground three of federal habeas petition at page 4. An affidavit is not necessary for even a layman to conclude that appointment of a defense expert would definitely have aided the defense in cross-examination of the State expert, as well as the presentation of possible defense expert. Where the record indicates the unreliability of the State's ballistic tests, it is plausible that the appointment of a defense ballistic expert would be fundamentally fair. Accordingly, Aguilar was denied his federal right to due process by the trial court denying him the assistance of a ballistics expert.

Respondent further asserts that, since the trial court did not make a specific ruling on Aguilar's request for a pathologist, Aguilar failed to preserve this error for review. In Texas, to preserve error for review, a defendant must receive an adverse ruling on his objection and the ruling must be conclusive; that is, it must be clear from the record that the trial judge in fact overruled the defendant's objection, or error is waived. *Powell v. State,* 897 S.W.2d 307, 310 (Tex. Crim. App. 1994).

A trial court's ruling on a motion may be implied when the court's actions or statements unquestionably indicate a ruling. *See Rey v. State,* 897 S.W.2d 333, 336 (Tex. Crim. App. 1995). In most cases where a motion was found to be implicitly overruled, the trial judge took some

affirmative action that clearly indicated a ruling. *See, e.g., Chappell v. State,* 850 S.W.2d 508, 509-10 (Tex. Crim. App. 1993) (ruling on defendant's objection to second jury shuffle occurred when court granted State's motion to shuffle venire); *Beebe v. State,* 811 S.W.2d 604, 605 (Tex. Crim. App. 1991) (counsel's "inartful" statement to trial court in pretrial hearing that "we would be entitled at this time, Judge, to more time to prepare ourself for trial [sic]," combined with the judge's response that the case would be tried the next morning, indicated both request and adverse ruling).

In the present case, written motions were filed for a psychiatric expert, a ballistics expert, and a pathologist expert by the defense. Aguilar was affirmatively granted a psychologist's expert assistance in the event the State called its own psychologist, denied a ballistics expert and the matter of the pathologist was taken under advisement. The trial judge made no further ruling and began the trial. Based on no further requests from the trial court for supplemental information regarding the request for a pathological expert, it can be determined that it concluded no expert assistance was warranted. The court's silence was a denial of Aguilar's request for the expert assistance of a pathologist, therefore, this issue is properly before the federal habeas court.

## JURY PREJUDICE DUE TO MID-TRIAL PUBLICITY

A trial court's determination of the scope and method of jury voir dire is reviewed for abuse of discretion. *United States v. Beckner,* 69 F.3d 1290, 1291 (5th Cir. 1995). The decision to permit individual questioning lies within the district court's discretion, and we will find an abuse of that discretion only "when there is insufficient questioning to allow defense counsel to exercise a reasonably knowledgeable challenge to unqualified jurors." *Id.* Where a defendant claims that voir dire was inadequate in situations of trial publicity, the conviction will be reversed where the defendant can establish "(1) that pretrial publicity about the case raised a significant possibility of prejudice, and

(2) that the district court's voir dire procedure failed to provide a reasonable assurance that prejudice would be discovered if present." *Beckner,* 69 F.3d at 1292.

First, the court must determine whether the record in Aguilar's case contains sufficient evidence of prejudice. Aguilar attached, as an exhibit to his prior pleadings, a copy of the Articles raising the issue of the publicity. The articles involved not simply a threat of violence, but a threat of violence directed toward witnesses in the very trial the jurors were called to hear allegedly at the direction of Aguilar. *See United States v. Davis,* 583 F.2d 190, 196 (5th Cir. 1978) (finding prejudice where pretrial publicity included the violent background of the defendant). In addition, the publicity was contemporaneous with the start of the trial and was, therefore, fresh in the mind of any panel member who was exposed to the article. *Cf. United States v. Gerald,* 624 F.2d 1291, 1298 n.3 (5th Cir. 1980) (noting that impressions and memories of any publicity had necessarily diminished in the eight months between arraignment and trial); *Salemme v. Ristaino,* 587 F.2d 81, 88 (1st Cir. 1978) (finding that because the trial was held five years after the prejudicial publicity, "any publicity surrounding the event had long since passed from the public's mind."). Aguilar has satisfied his burden in demonstrating that the record contains sufficient pretrial publicity to raise a significant possibility of prejudice.

"Because jurors exposed to pretrial publicity are in a poor position to determine their own impartiality . . . courts must make independent determinations of the impartiality of each juror." *Beckner,* 69 F.3d at 1291; *United States v. Davis,* 583 F.2d 190 (5th Cir. 1978). A juror's potential bias due to trial publicity is decided by the trial court after observing "the demeanor and response of the prospective jurors and [evaluating] any possible prejudice." *United States v. Doggett,* 821 F.2d 1049, 1051 (5th Cir. 1987). The trial court's determination is reviewed for an abuse of discretion only. *Id.* There is no abuse of discretion in a trial court's determination of bias from exposure to trial publicity where the court carefully and thoroughly questions jurors and allows counsel to question them as well. *United States v. Flores,* 63 F.3d 1342 (5th Cir. 1995). In the present case, the trial judge would not conduct its own inquiry into possible prejudice from trial publicity. Instead, the court

cursorily told the trial counsel that he could ask the questions and nothing further was done by the trial court to ensure that Aguilar would have a jury composed of individuals not influenced by an article which speaks of Aguilar orchestrating violence against a trial witness. The court failed in its duty to ensure a fundamentally fair trial by jurors free from any bias or prejudice and, in doing so, abused its discretion in determining a lack of any prejudice from the publicity about threats to trial witnesses.

Respondent further contends that the facts of Aguilar's situation are factually distinguishable from precedent in which prejudice was found from trial publicity during the guilt-innocence stage since his prejudice would only have occurred during the jury selection in voir dire.[6] This is an erroneous conclusion. Jury selection is a critical stage in a criminal trial, and has been held explicitly so by the courts. *See e.g. Lewis v. United States,* 146 U.S. 370, 36 L.Ed. 1011, 13 S.Ct. 136 (1892). To so state that jury selection is any less important than the guilt-innocence phase of a criminal defendant's trial minimizes the importance of the due process considerations afforded a defendant in each and every critical stage of a trial.

### INSUFFICIENCY OF EVIDENCE TO PROVE AGUILAR GUILTY OF MURDER OF LEO CHAVEZ

Aguilar's Eighth and Fourteenth Amendment rights have been violated as a result of his conviction and death sentence pertaining to the death of Leo Chavez without the jury finding that Aguilar actually killed, attempted to kill, or intended that Leo Chavez's life be taken, in violation of *Enmund v. Florida,* 458 U.S. 782, 73 L. Ed. 2d 1140, 102 S. Ct. 3368 (1982), and *Tison v. Arizona,* 481 U.S. 137, 95 L. Ed. 2d 127, 107 S. Ct. 1676 (1987).

*Enmund v. Florida* held that the death penalty may not be imposed on one who "aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U.S. at

---

[6] See page 31 of Respondent's Answer and Motion for Summary Judgment in which Respondent states that the jury selection stage of trial is not as critical as the guilt-innocence phase.

797. Sentenced to death, Enmund had driven the "getaway" car for two others who had robbed and killed an elderly couple. Focusing on Enmund's individualized culpability, the court found that he did not kill, attempt to kill, or intend to kill; thus, the imposition of the death penalty was impermissible under the Eighth Amendment. *Id.* at 798. *Tison v. Arizona* subsequently limited *Enmund* by holding that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." 481 U.S. at 158.

Evidence under the party theory of responsibility for murder was lacking regarding Aguilar murdering Leo Chavez. Respondent's theory rests solely on the fact that Aguilar had a plan to kill Rick Esparza and this murder would have been related to Aguilar's alleged involvement in the marijuana "business." Respondent states Aguilar's motive to kill Esparza shows the reckless indifference towards the life of Leo Chavez.

Respondent further argues that Quiroz had no independent motive to kill Rick Esparza which somehow infers all culpability upon Aguilar for the murder of both Annette and Leo Chavez. The record of trial does not show any plan to kill the Chavez family, nor does it show that Aguilar aided, solicited, encouraged, directed, or aided Quiroz in murdering Leo Chavez. The record merely places facts in evidence that Aguilar was present and responsible for killing Annette Chavez while Quiroz independently killed Leo Chavez. Without sufficient evidence, finding Aguilar guilty of the murder of both individuals is a violation of his rights.

## FAILURE TO GIVE LESSER INCLUDED INSTRUCTION

In *Cordova v. Lynaugh,* 838 F.2d 764 (5th Cir. 1988), the court held that due process and the Eighth Amendment require that the jury in a capital case "must be allowed to consider a lesser noncapital offense if the jury could rationally acquit on the capital offense and convict for the noncapital crime." 838 F.2d at 767. In order for a defendant in a capital trial to be constitutionally entitled to instruction on a lesser-included offense, he must show that a "rational juror, given all the facts, [could acquit him] of capital murder and [convict] him of a lesser included offense." *Cordova,*

838 F.2d at 767 (5th Cir. 1988). This necessarily requires a showing that the facts of the case and the laws of the state warrant such an instruction.

When deciding whether to submit an instruction on a lesser-included offense, the trial court employs a two-step analysis under *Royster v. State,* 622 S.W.2d 442 (Tex. Crim. App. 1975). The first prong of the Royster test requires that the lesser-included offense be within the proof necessary to establish the offense charged. *Id.* at 446. In this case, the first prong of the Royster test is easily met because the elements of murder are within the proof required for capital murder. *Rousseau v. State,* 855 S.W.2d 666, 673 (Tex. Crim. App. 1993) (citing *Creel v. State,* 754 S.W.2d 205, 211 (Tex. Crim. App. 1988), cert. denied 114 U.S. 313 (1993)).

The second prong of the Royster test is whether there is some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau,* 855 S.W.2d at 672-673 (clarifying Royster as to the rational findings of the jury). In determining whether some evidence in the record supports the charge of murder, we review all the evidence presented at trial. *Havard v. State,* 800 S.W.2d 195, 216 (Tex. Crim. App. 1989) [*4] (op. on reh'g); *Bell v. State,* 693 S.W.2d 434, 442 (Tex. Crim. App. 1985). The credibility of the evidence and whether it conflicts with other evidence is not to be considered. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex. Crim. App. 1992) (per curiam).

Evidence under the party theory of responsibility for murder was lacking regarding the muder of Leo Chavez by Aguilar. Respondent's theory rests solely on the fact that Aguilar had a plan to kill Rick Esparza and this murder would have been related to Aguilar's alleged involvement in the marijuana "business." Respondent states Aguilar's motive to kill Esparza shows the reckless indifference towards the life of Leo Chavez.

Respondent further argues that Quiroz had no independent motive to kill Rick Esparza which somehow infers all culpability upon Aguilar for the murder of both Annette and Leo Chavez. The record of trial does not show any plan to kill the Chavez family, nor does it show that Aguilar aided, solicited, encouraged, directed, or aided Quiroz in murdering Leo Chavez. The record merely places

facts in evidence that Aguilar was present and responsible for killing Annette Chavez while Quiroz independently killed Leo Chavez. A lesser-included instruction was appropriate in the present case.

### APPLICATION OF THE PROCEDURAL DEFAULT DOCTRINE TO AGUILAR'S VARIOUS CLAIMS

Ordinarily, the mere fact that a federal habeas corpus claimant failed to abide by a state procedural rule does not, in and of itself, prevent federal review of a claim; the state court must actually have relied upon the procedural bar as an independent basis for its disposition of the case. *Harris v. Reed,* 489 U.S. 255, 103 L.Ed. D 308 (1989); *Gochicoa v. Johnson,* 188 F.3d 440 (5th Cir. 1997). "There are three situations in which an otherwise valid state ground will not bar federal claims: (1) where failure to consider a prisoner's claims will result in a 'fundamental miscarriage of justice,' *Coleman v. Thompson,* 501 U.S. 722, 50, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); (2) where the state procedural rule was not 'firmly established and regularly followed,' *Ford v. Georgia,* 498 U.S. 411, 423-424, 112 L. Ed. 2d 935, 111 S.Ct. 850 (1991); *James v. Kentucky,* 466 U.S. 341, 348-349, 80 L.Ed. 2d 346, 104 S.Ct. 1830 (1994); and (3) where the prisoner had good 'cause' for not following the state procedural rule and was 'prejudiced' by not having done so, *Wainwright v. Sykes, supra,* at 87."[7] *Warden v. Carpenter,* 529 U.S. 446, 146 L.Ed. 2d 518, 120 S.Ct. 1587 (2000).

To establish "cause," a petitioner must show either that some objective external factor impeded the defense counsel's ability to comply with the state's procedural rules or that petitioner's trial counsel rendered ineffective assistance. *Warden v. Carpenter,* 529 U.S. at 694-695. *See also Murray v. Carrier,* 477 U.S. 478, 490-492, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986). However, to circumvent a finding of procedural default, petitioner must have also raised and exhausted his particular ineffective assistance of counsel claim before a petitioner can assert that claim as a cause for not having complied with state procedural rules. *Id.*

---

[7] Full citation for this case is *Wainwright v. Sykes,* 433 U.S. 72, 53 L.Ed. 594, 97 S. Ct. 2497 (1977).

Cause and prejudice exist pertaining to several of Aguilar's claims. Aguilar has properly exhausted his claims that counsel was ineffective for not properly limiting the introduction of evidence of Aguilar's gang membership and counsel's failure to request a limiting instruction. Therefore, Aguilar's claims pertaining to the admissibility of said evidence and related limiting instructions are not procedurally defaulted for trial counsel's failure to preserve error.

Likewise, Aguilar has raised the ineffective assistance of his direct appeal counsel in failing to properly brief the sufficiency of the evidence argument as well as in failing to raise certain issues on direct appeal. Specifically, the issue of evidentiary sufficiency not being properly briefed has been raised by Aguilar as ineffective assistance of the direct appeal attorney in his supplemental claim to his federal petition, which as stated previously, has been properly exhausted.

### STATE COURT FINDING OF ABUSE OF THE WRIT ON AGUILAR'S FINAL FOUR CLAIMS WAS IMPROPER

Respondent asserts that, since Aguilar's final four claims were dismissed by the state court for abuse of the writ, federal habeas review of the same is necessarily precluded. The same principles of the exceptions to a finding of procedural default apply when assessing default based on an abuse of the writ doctrine.

Ordinarily, the mere fact that a federal habeas corpus claimant failed to abide by a state procedural rule does not, in and of itself, prevent federal review of a claim; the state court must actually have relied upon the procedural bar as an independent basis for its disposition of the case. *Harris v. Reed,* 489 U.S. 255, 103 L.Ed. D 308 (1989); *Gochicoa v. Johnson,* 188 F.3d 440 (5th Cir. 1997). "There are three situations in which an otherwise valid state ground will not bar federal claims: (1) where failure to consider a prisoner's claims will result in a 'fundamental miscarriage of justice,' *Coleman v. Thompson,* 501 U.S. 722, 50, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); (2) where the state procedural rule was not 'firmly established and regularly followed,' *Ford v. Georgia,* 498 U.S. 411, 423-424, 112 L. Ed. 2d 935, 111 S.Ct. 850 (1991); *James v. Kentucky,* 466 U.S. 341, 348-349, 80 L.Ed. 2d 346, 104 S.Ct. 1830 (1994); and (3) where the prisoner had good 'cause' for

not following the state procedural rule and was 'prejudiced' by not having done so, *Wainwright v. Sykes, supra,* at 87."[8] *Warden v. Carpenter,* 529 U.S. 446, 146 L.Ed. 2d 518, 120 S.Ct. 1587 (2000).

To establish "cause," a petitioner must show either that some objective external factor impeded the defense counsel's ability to comply with the state's procedural rules or that petitioner's trial counsel rendered ineffective assistance. *Warden v. Carpenter,* 529 U.S. at 694-695. *See also Murray v. Carrier,* 477 U.S. 478, 490-492, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986). However, to circumvent a finding of procedural default, petitioner must have also raised and exhausted his particular ineffective assistance of counsel claim before a petitioner can assert that claim as a cause for not having complied with state procedural rules. *Id.*

Aguilar's first state writ was already filed on September 9, 1997, when the Texas Court of Criminal Appeals withdrew its original opinion affirming his conviction and sentence on October 29, 1997, causing Aguilar to file a motion for a rehearing based on the Court of Criminal Appeals reissuance of an opinion without allowing any input from Aguilar prior to rendering its new decision. Aguilar's assertions in his second state writ center around events that had not yet occurred at the time of submission of his first state writ, specifically, the state appellate court had not yet denied Aguilar's motion for a rehearing, nor was it yet obvious to Aguilar that his appellate review was being conducted by a judiciary whom he concluded was biased and prejudiced.

Furthermore, Aguilar's claims of a meaningless appellate review were stricken from the record in their entirety by the state habeas court in its September 22, 2000 Order on Applicant's Second Application for Writ of Habeas Corpus. This order specifically stated that the allegations contained in Aguilar's third and fourth grounds[9] were "ORDERED struck in their entirety."

---

[8] Full citation for this case is *Wainwright v. Sykes,* 433 U.S. 72, 53 L.Ed. 594, 97 S. Ct. 2497 (1977).

[9] The third and fourth grounds were those specifically dealing with the ineffective appellate review perceived by Aguilar when the Texas Court of Criminal Appeals allegedly failed to read the appellate record upon its review of Aguilar's appeal.

Presumably, based upon the state habeas' court's actions, the Texas Court of Criminal Appeals was never allowed an opportunity to review these issues. Additionally, it is inconsistent with theories of jurisprudence that a judicial body who has been accused of bias and prejudice in its decision making would hear that issue anyway. The claims centered around Aguilar's ineffective appellate review are properly before the federal court at this time.

## GROUNDS NOT SPECIFICALLY ADDRESSED

On all grounds for relief which Petitioner has not specifically addressed in his response filed herein, Petitioner stands on his previous pleadings.

WHEREFORE, Petitioner prays that the Court grant him relief to which he may be entitled in this proceeding to include holding an evidentiary hearing as requested herein.

Respectfully submitted,

SERGI & ASSOCIATES, P.L.L.C.
109 East Hopkins, Suite 200
San Marcos, Texas 78666
Telephone: (512) 392-5010/Fax: (512) 392-5042

BY: _____
David K. Sergi
Attorney for Jesus Ledesma Aguilar
State Bar No. 18036000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was mailed on January 13, 2003 via first-class mail to:

Ms. Katherine Hayes
Assistant Attorney General
Texas Attorney General's Office
P.O. Box 12548
Austin TX 78711

_____
DAVID K. SERGI

CAUSE NO. 95-CR-1088-A

| | | |
|---|---|---|
| STATE OF TEXAS | ][ | IN THE DISTRICT COURT |
| v. | ][ | 107TH JUDICIAL DISTRICT |
| JESUS LEDESMA AGUILAR, Applicant | ][ | CAMERON COUNTY, TEXAS |

## ORDER ON APPLICANT'S SECOND APPLICATION FOR WRIT OF *HABEAS CORPUS*

Today, after having considered Applicant Jesus Ledesma Aguilar's trial record; the Criminal Appeals Opinion on his direct appeal, **Aguilar v. State**, Cause No. 72, 470 (Affirmed; Unpub'd); his first Application for writ of *habeas corpus*, **Ex parte Aguilar**, Cause No. 36, 142-01; the instant Application, and the State's proposed Order thereto, this Court finds and concludes that:

1. a consideration of Applicant's allegations is unnecessary through his failure to comply with **Tex. Code Crim. Proc. 11.071, §5(a)**, which states that, when an applicant files a subsequent application, he shall provide specific facts establishing at least one of three premises.

2. Although Applicant references **§5(a)(1)**, *supra*, App., at 17, said reference does not warrant a favorable review of this Application; Applicant not only misconstrues said sub-Section's meaning, he also fails to meaningfully apply it to his record.

3. Applicant's allegations in his third and fourth Grounds, jointly and severally, exceed the zealousness expected of an aggressive advocate, amounting to a gratuitous and unfounded contempt for the Criminal Appeals court's integrity and dignity, **3A Govt. Code, T.2, Subt. G., App. A., Art. 10, §9**, "Preamble," Para. 4 (A lawyer should demonstrate ...)

1



& **Rules 3.01, 3.03(a)(1)**, and are ORDERED struck in their entirety.

4. Even had Rene Gonzalez's statement been sworn to, it amounts to no evidence, since it does not address the probability that had he separately briefed evidence sufficiency issues, the Criminal Appeals court would have still affirmed Applicant's conviction.

This Court also finds it irreconcilable that Applicant raises an ineffective assistance claim against Gonzalez in that regard, *App.*, at 22-23, yet relies on his opinion that had he separately brief the sufficiency issues, the Criminal Appeals court would have at least remanded his case for a new trial.

5. Applicant's own affidavit has no value since it does not satisfy **§5(a)**'s requirements, does not show how its material averments (if any) can be independently corroborated, and is endorsed by a convicted felon all of whose post-conviction remedies have been consistently denied.

6. The instant Application otherwise fails to prove there is any controverted, previously-unresolved facts material to the legality of Applicant's confinement. **Tex. Code Crim. Proc. 11.07 §3(d)**; **Ex parte Dutchover**, 779 S.W.2d 76, 78 (Tex. Crim. App. 1989, *en banc*).

The Clerk of this Court is now ORDERED to prepare, pursuant to **Tex. Code Crim. Proc. 11.071, §5(b)**, a Transcript of all instruments relevant to this second Application, and transmit the same to the Clerk of the Court of Criminal Appeals as soon as possible.

2

Signed for entry on September 22, 2000.

HON. BENJAMIN EURESTI, JR.
Judge Presiding

SEP 2 2 2000

```
09/22/00 COPIES:
C:   Mr. John A. Olson    Mr. Larry Warner        Ms. Katherine D. Hayes
     A.D.A                777 E. Harrison St.     Tex. A.G.'s Office, Cap. Litigation
                          2nd Floor               POB 12548
                          City TX.   78520-7123   Austin      TX.    78711-2548
```

3