United States District Court
Southern District of Texas
FILED

APR 1 6 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JESUS LEDESMA AGUILAR, § <br> Petitioner § <br> § <br> V. § <br> § <br> JANIE COCKRELL, DIRECTOR, TEXAS § <br> DEPARTMENT OF CRIMINAL JUSTICE- § <br> INSTITUTIONAL DIVISION, § <br> Respondent. § | CIVIL ACTION NO. B-01-195 |

## OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

COMES NOW, Jesus Ledesma Aguilar, who has petitioned this Court for a Write of Habeas Corpus and hereby files these limited objections to the Magistrate Judge's Report and Recommendation.

As the Magistrate Judge has recommended granting relief to Aguilar's Seventh Claim for Relief, Aguilar respectfully does not object to this recommendation, and in effect whole heartedly endorses it.

*Note regarding response:* The Magistrate Judge's decision does not follow the Claims for Relief in the order believed by Petitioner. As a result, and for the ease of the Court in reviewing this matter, Aguilar files these objections in the same order that the Magistrate Judge utilized.

1.  **Shackling**

Aguilar argued that his rights to due process of law were violated because he appeared before the jury in shackles. The State Habeas Court rejected this claim on the grounds that Aguilar should have raised it in his direct appeal.

A review of the record does not reveal that the shackling issue could have been raised on direct appeal so that it could be briefed to the Texas Court of Criminal Appeals. As a result, this is the unique ground of habeas. As Miller Farmer has stated, "the appeal is a book, the habeas is the rest of the story." In this case, the issue of shackling was a habeas issue rather than a direct appeal. Thus, the Magistrate's ruling disregards the distinction between habeas and direct appeal. Given the state of the record, Aguilar would respectfully object to the Magistrate's conclusion that he had to raise this issue on direct appeal, thus the point was procedurally defaulted.

2. *Claims for Relief Twenty-Two through Twenty-Five*

Aguilar respectfully objects to the Magistrate's recommendation regarding Aguilar's claim numbers twenty-two through twenty-five relating to the police station lineup, the admission of allegedly false testimony, and alleged bias by the Texas Court of Criminal Appeals. The opinion by the Texas Court of Criminal Appeals gives this Court no guidance as to why the issues were procedurally defaulted--why the Court felt that this was an abusive of the writ process. It appears that the Texas Court of Criminal Appeals merely issued a rubber-stamp opinion which contained no actual evidence of legal knowledge, analysis or evidence of significant legal training. The court's benchmark ruling in *Coleman* simply does not apply where the Texas Court of Criminal Appeals fails in its duties to present appropriate argument and analysis to justify its conclusion. Thus, this Court should at the very least conduct a *de novo* review.

3. *Objection to Claims Twenty-Four and Twenty-Five*

In claims Twenty-four and Twenty-five, Aguilar contends that the Texas Court of Criminal Appeals is biased as an institution when it ruled on the direct appeal. It is interesting to note that the Texas Court of Criminal Appeals did not explain why a quotation that did not appear in the actual

trial but appears in the state's record does not amount to institutional bias. The Magistrate's opinion fails to recognize the fact that the Texas Court of Criminal Appeals did not permit neutral third-party judges to evaluate their credibility, but rather that the court ruled and judged itself. As a result, the Twenty-fourth and Twenty-fifth Claims for Relief are objected to because the Court did not provide sufficient analysis to justify its reasoning.

4. **Failure to Appoint Experts**

In Claim Three, Aguilar contends that the trial court failed to appoint a ballistics expert to testify on behalf and this violated due process of law. The Magistrate faults Aguilar for failing to attach an affidavit from an expert or a portion of a learned treatise supporting the argument that a ballistics expert could have made a difference. In this case, a review of the transcript reveals that it is undisputed that the state's ballistics expert could not say that the gun which was introduced at trial, in fact, fired the fatal bullets. Given the fact Aguilar's defense was, that he did not do it, it is clear that a defense expert who could have analyzed the gun and come to perhaps a different conclusion would have been seminal to the case. This is not the type of information readily ascertainable in books or treatises and without funds no expert would issue such an affidavit. As a result, Aguilar respectfully objects to this portion of the Magistrate's recommendations.

5. **Publicity**

In Aguilar's Fourth Claim for Relief, he contends he is prejudiced by two newspaper articles that appeared during jury selection. The Magistrate goes through the analysis found in *United States v. Aragon*, 962 F.2d 439, 433-44 (5th Cir. 1992) and finds the fact that the first prong that the publicity was prejudicial was met. As the Magistrate himself recognizes, "while it is not clear from the record how likely jurors were to have seen the articles, Aguilar conceded in his argument for a

mistrial that the court instructed the jurors not to read anything about the case." However, while the trial court offered Aguilar the opportunity to conduct individual *voir dire* on the subject, Aguilar did not take advantage of the opportunity and this, at the very least, raises spectrum in effective assistance of counsel.

### 6. Sufficiency of the Evidence Supporting the Jury's Finding that Aguilar was a Party to the Second Murder

In Claims Five and Six, Aguilar contends that the evidence was insufficient to support the jury's finding that he was a party to the murder of Leo Chavez, Sr., and the finding that he was responsible as a party violated his rights to due process. As the Court points out, the sufficiency of evidence is a mixed question of law and fact. While the magistrate judge applied the correct standard under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the U.S. Court held that, "the relevant question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trial fact could have found the essential elements of the crime beyond a reasonable doubt." While Aguilar concedes that he may have had a motive to kill the people in Rick Esparza's trailer, it is interesting to note that this theory is literally turned on its head because Quiroz was the first person to actually shoot and then throw the gun to Aguilar. The eye witness does not indicate nor does the record reflect that there was any action taken by Aguilar, which could lead any reasonable person to the conclusion that he, in fact, intended for both people to die. Rather, it would appear that once Quiroz fired the fatal bullet, at the very best Aguilar decided to follow suit. However, as the state will no doubt argue, Aguilar maintains he is completely innocent of either crime.

Thus, taking what one is left with, it would appear that there is no evidence, circumstantial or otherwise, which would indicate that it was Aguilar's desire to see the murders accomplished.

The question of delving into Mr. Aguilar's motives is simply fruitless because there are numerous motives which would indicate that Aguilar did not wish to see the people in Rick Esparza's trailer killed. You must notice below that these motives is the fact that Aguilar believed that Esparza owed him money.

7. <u>Constitutionality of the Texas Death Penalty Statute</u>

In Claims Fourteen and Fifteen, Aguilar claimed that the Texas death penalty statute is unconstitutionally vague because the special issues the jury must answer in assessing a defendant's penalty do not define the terms "reasonable expectation," and "probablility." Given the status of the case law, Aguilar objects for record purposes only.

In regard to the remaining Claims for Relief, Aguilar incorporates by reference his prior briefing and objects for the reasons given therein.

Respectfully submitted,

SERGI & ASSOCIATES, P.L.L.C.
109 East Hopkins, Suite 200
San Marcos, Texas 78666
Telephone: (512) 392-5010/Fax: (512) 392-5042

BY: /s/ David K. Sergi
David K. Sergi
State Bar No. 18036000
Attorney for Jesus Ledesma Aguilar
Permission to sign by Larry Warner, TBN:20871500