

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 4 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR, | § | |
| Petitioner | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-01-195 |
| | § | |
| DOUGLAS DRETKE, DIRECTOR, | § | |
| Texas Department of Criminal Justice- | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## SKELETAL CERTIFICATE OF APPEALABILITY

COMES NOW, Jesus Ledesma Aguilar, who has petitioned this Court for a Write of Habeas

Corpus and hereby files this Application for a Certificate of Appealability.[1]

## STANDARD OF REVIEW

This § 2254 habeas petition is subject to the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"). *See Penry v. Johnson,* 532 U.S. 782, 792, 121 S. Ct. 1910, 1918 (2001).

AEDPA requires that Aguilar obtain a Certificate of Appealability before he can appeal the district

court's denial of habeas relief. 28 U.S.C. § 2253(c) (I) (2000). Hence, "until a COA has been issued

federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."

*Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003).

A Certificate of Appealability will issue only if the petitioner makes substantial showing of

the denial of a constitutional right." 28 U.S.C. § 2253(c) (2) (2000); *Miller-El,* 537 U.S. at 336, 123

S. Ct. at 1039. More specifically, the petitioner must demonstrate that "reasonable jurists would find

---

[1]This application is skeletal and will be supplemented. Counsel has been working on an
opposition to an execution setting in *State v. Ramos,* in Hidalgo County.

the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). Likewise, when the district court has rejected a claim on a procedural ground, "the petitioner must also demonstrate that 'jurists of reason would find it debatable whether the district court was correct in the procedural ruling.'" *Henry v. Cockrell,* 327 F.3d 429, 431 (Sth Cir. 2003) (quoting *Slack,* 529 U.S. at 484, 120 S. Ct. at 1604). The Supreme Court counseled that "a COA ruling is not the occasion for a ruling on the merit of petitioner's claim[.]" *Id.* at 331. Instead, the court should engage in an "overview of the claims in the habeas petition and a general assessment of their merits." *Id.* at 336. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338.

Ultimately, "[t]o prevail on a petition for writ of habeas corpus, a petitioner must demonstrate that the state court proceeding 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Robertson v. Cockrell,* 325 F.3d 243, 247-48 (5th Cir. 2003) (en banc) (quoting 28 U.S.C.§ 2254(d) (I) (2000)).[2] However, "[w]e have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect." *Catalan v. Cockrell,* 315 F.3d 491, 493 (5th Cir. 2002) (citation and quotation omitted). *Bagwell v. Dretke,* ___ F.3d ___ (5th Cir. 2004) No. 03-51060.

---

[2]A state court's decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States . . if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523 (2000).

entitled to the physical indicia of innocence, a court is justified in ordering him handcuffed and shackled during trial [when] there is a danger of escape or injury to the jury, counsel, or other trial participants." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994). Most importantly, this inquiry "does not trigger a type of 'least means' analysis. That in retrospect some lesser restraint might have sufficed is not determinative." *Marquez*, 11 F.3d at 1244.

Here there were no threats nor evidence of other reasons that Aguilar needed to be shackled. Thus, a Certificate of Appealability should issue. *Bagwell, supra.*

2.    Claims for Relief Twenty Two through Twenty Five

Aguilar respectfully asks for a Certificate of Appealability regarding Aguilar's claim numbers twenty-two through twenty-five relating to the police station lineup, the admission of allegedly false testimony, and alleged bias by the Texas Court of Criminal Appeals. The opinion by the Texas Court of Criminal Appeals gives this court no guidance as to why the issues were procedurally defaulted, why the court felt that this was an abusive of the writ process. It appears that the Texas Court of Criminal Appeals merely issued a rubber stamp opinion which contained no actual legal knowledge, analysis or evidence of significant legal training. Thus, the court's benchmark ruling in *Coleman* simply does not apply where the Texas Court of Criminal Appeals fails in its duties to present appropriate argument and analysis to justify its conclusion. Thus, this court should at the very least conduct a de novo review.

3.    Objection to Claims Twenty Four and Twenty Five

In claims Twenty Four and Twenty Five, Aguilar contends that the Texas Court of Criminal Appeals is biased as an institution when it ruled on the direct appeal. It is interesting to note that the Texas Court of Criminal Appeals did not explain why a quotation that did not appear in the actual

trial but appears in the State's record does not amount to institutional bias. However, the Magistrate's opinion fails to recognize the fact that the Texas Court of Criminal Appeals did not permit neutral third party judges to evaluate their credibility, but rather that the court ruled and judged itself.

Recently, in the case of *Wiggins v. Smith*, 539 U.S. ___ (2003), this very issue came before the United States Supreme Court. In *Wiggins,* the Court below based its conclusion that the trial counsel had done a job worthy of the standard in *Strickland v. Washington* and based it on that decision on a "clear factual basis." (Slip op, at 15). The Supreme Court held "[a]s the State and the United States now concede, the records contain no mention of sexual abuse, much less the repeated molestations and rapes of petitioner detailed in the Selvog report. Brief for Respondents 22; Brief for United States as *Amicus Curiae* 26; App. to Pet. for Cert. 175a–179a, 190a. The state court's assumption that the records documented instances of this abuse has been shown to be incorrect by "clear and convincing evidence," 28 U.S.C. §2254(e)(1), and reflects "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," §2254(d)(2). This partial reliance on an erroneous factual finding further highlights the unreasonableness of the state court's decision.

Thus, *Wiggins* holds that a state court acts unreasonably when it relies on facts that are not contained in the record. In this case, as detailed in both the original writ of habeas corpus as well as the objections and is conceded by the Texas Court of Criminal Appeals, the testimony of Mr. Albino Garcia simply did not exist in the record. Thus, we believe that *Wiggins* now supports the proposition that the Court of Criminal Appeals should have been recused and this matter decided by a different body.

As a result, the Twenty Fourth and Twenty Fifth Claims are ripe for a Certificate of Appealability because the court did not provide sufficient analysis to justify its reasoning and it was raised as early as possible moment after it was discovered.

### 4.    Failure to Appoint Experts

In Claim Three, Aguilar contends that the trial court felt to appoint a ballistics expert to testify on behalf on this violated due process of law. The Magistrate and the Court faults Aguilar for failing to attach an affidavit from an expert or a portion of a learned treatis supporting the argument that a ballistics expert could have made a difference. In this case, a review of the transcript reveals that it is undisputed that the state's ballistics expert could not say that the gun, which was introduced at trial, in fact fired the fatal bullets. Given the fact that Aguilar's defense was that he did not do it, it is clear that a defense expert who could have analyzed the gun and come to perhaps a different conclusion would have been seminal to the case. This is not the type of information readily ascertainable in books or treatises and without funds no expert would issue such an affidavit. As a result, Aguilar respectfully asks for a Certificate of Appealability.

### 5.    Publicity

In Aguilar's Fourth Claim for Relief, he contends he is prejudiced by two news paper articles that appeared during jury selection. The Magistrate and the Court goes through the analysis found in *United States v. Aragon,* 962 F.2d 439, 433-44 (5th Cir. 1992) and finds the fact that the first prong that the publicity as prejudicial was met. As the Magistrate himself recognizes, ". . . while it is not clear from the record how likely jurors were to have seen the articles, Aguilar conceded in his argument for a mistrial that the court instructed the jurors not to read anything about the case." However, while the trial court offered Aguilar the opportunity to conduct individual voir dire on the

subject, and Aguilar did not take advantage of the opportunity, this at the very least raises spectrum in effect of this instance and a Certificate of Appealability should be granted.

6.    Sufficiency of the Evidence Supporting the Jury's Finding that Aguilar was a Party to the Second Murder

In Claims Five and Six, Aguilar contends that the evidence was insufficient to support the jury's finding that he was a party to the murder of Leo Chavez, Sr., and the finding that he was responsible as a party violated his rights to due process. As the court points out, the sufficiency of evidence is a mixed question of law and fact. While the magistrate judge applied the correct standard under *Jackson v. Virginia,* 443 U.S. 307, 319 (1979), the U.S. Court held that, "the relevant question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trial fact could have found the essential elements of the crime beyond a reasonable doubt." While Aguilar concedes that he may have had a motive to kill the people in Rick Esparza's trailer, it is interesting to note that this theory is literally turned on its head because Quiroz was the first person to actually shoot and then throw the gun to Aguilar. The eye witness does not indicate nor does the record reflect that there was any action taken by Aguilar, which could lead any reasonable person to the conclusion that he in fact intended for both people to die. Rather, it would appear that once Quiroz fired the fatal bullet, at the very best Aguilar decided to follow suite. However, as the state will not doubt argue, Aguilar maintains he is completely innocent of either crime. Thus taking with what one is left with it would appear that there is no evidence, circumstantial or otherwise, which would indicate that it was Aguilar's desire to see the murders accomplished. The question of delving into Mr. Aguilar's motives is simply fruitless because there are numerous motives which would indicate that Aguilar did not wish to see the people in Rick Esparza's trailer killed.

7.    <u>Constitutionality of the Texas Death Penalty Statute</u>

In Claims Fourteen and Fifteen, Aguilar claimed that the Texas death penalty statute is unconstitutionally vague because the special issues the jury must answer in assessing a defendant's penalty do not define the terms "reasonable expectation," and "probablility." Given the status of the case law, Aguilar believes that a Certificate of Appealability is ripe.

In regards to the remaining Claims for Relief, Aguilar incorporates by reference his prior briefing and objects for the reasons given therein.

8.    *Beck v. Alabama*

Mr. Aguilar respectfully asks this Court to issue a Certificate of Appealability regarding the issues raised in *Beck v. Alabama*. The Court has utilized the wrong standard of review in assessing whether the *Beck* claim should be upheld. Given that the Magistrate recommended relief on this claim, it is apparent that a Certificate of Appealability should be granted because the Magistrate is presumed to be a reasonable jurist and, thus, the Magistrate disagrees with the reasoning of the District Court. *Bagwell, supra.*

Respectfully submitted,

SERGI & ASSOCIATES, P.L.L.C.
109 East Hopkins, Suite 200
San Marcos, Texas 78666
Telephone: (512) 392-5010/Fax: (512) 392-5042

BY:    _____
David K. Sergi
Attorney for Jesus Ledesma Aguilar
State Bar No. 18036000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was mailed on June 7, 2004 via

first-class mail to:

Ms. Katherine Hayes
Assistant Attorney General
Texas Attorney General's Office
P.O. Box 12548
Austin TX 78711

DAVID K. SERGI