

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JUL 2 7 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| JESUS LEDESMA AGUILAR | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | B-01-195 |
| | § | |
| DOUG DRETKE, Director, Texas Department of | § | |
| Criminal Justice-Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION

Jesus Ledesma Aguilar has filed a motion for a certificate of appealability ("COA"). This motion was referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### Bac[kground]

Aguilar and Rick Esparza were partners ... their homes in Texas to Mississippi. Shortly after they began wor[ked] ... er asked Esparza to transport marijuana to Mississippi. Esparza di[d] ... Esparza and his wife were in Mississippi on this run, Aguilar appeare[d] ... accused Esparza of using Aguilar's connections to sell drugs behin[d] ... Esparza on several subsequent occasions.

*Christian has File*

On June 8, 1995, Esparza and his wife to[ok ... Mississi]ppi. Esparza's sister Annette, her husband Leo, and their two children, Leo, Jr. (nine years old) and Lincoln (about two

---

[1] The facts of this case are set out in greater detail in my Report and Recommendation entered on March 3, 2003.

1

years old), stayed at Esparza's home.

At approximately 5:00 a.m. on June 9, Leo, Jr. was awakened by the sound of a gunshot. Leo, Jr. got out of bed and entered the kitchen. Leo, Jr. saw his parents on the floor with two men standing over them. Leo, Jr. testified that the "American" man told his father to "[g]et your fat ass up," and then saw the man shoot his father. The "Mexican" man then took the gun and shot his mother. A pathologist testified that Leo, Sr. had been severely beaten before he was shot.

Approximately two weeks after the murders, Leo, Jr.'s grandmother was reading the newspaper when Leo, Jr. saw a picture and told her that two of the men in the picture were the men who "hurt" his parents. His grandfather took Leo, Jr. to the police station where Leo, Jr. identified Chris Quiroz as the "American" who shot his father, and Aguilar as the "Mexican" who shot his mother.

Aguilar was convicted of capital murder for intentionally and knowingly causing the death of more than one person during the same criminal transaction. Tex. Penal Code Ann. § 19.03(a)(7)(A).

On March 3, 2003, I entered a Report and Recommendation in which I recommended granting Aguilar's petition on the grounds that the trial court denied his Fourteenth Amendment right to due process of law by refusing his request for a jury instruction on the lesser included offense of non-capital murder. I also recommended denying the remainder of Aguilar's petition. On May 27, 2004, Judge Tagle entered an Order adopting the portions of my Report and Recommendation that recommended denying Aguilar's petition, and rejecting the portion that recommended granting relief. On June 25, 2004, Aguilar filed a motion for a COA.

2

Analysis

A.    Standard For Granting A Certificate Of Appealability

A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request. *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does."). "A plain reading of the [Antiterrorism and Effective Death Penalty Act] compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone." *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000). The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable

> whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "[T]he determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001).

This Court carefully and exhaustively considered each of Petitioner's claims. While the issues Petitioner raises are clearly important and deserving of the closest scrutiny, this Court finds that each of the claims, with one exception, is foreclosed by clear and binding precedent. The exception is petitioner's seventh ground for relief.

B.   <u>Lesser Included Offense</u>

In his seventh ground for relief, Aguilar argues that the trial court violated his Fourteenth Amendment right to due process of law when it refused his request for a lesser included offense instruction to the jury. Aguilar contends that the evidence would have supported a finding that he was guilty only of non-capital murder, not capital murder, because the jury could have found that he murdered only one of the two victims and that his accomplice acted on his own initiative to murder the other victim. If Aguilar's contention is correct, then due process required the trial court to give a lesser included offense instruction upon Aguilar's request. *See Beck v. Alabama*, 447 U.S. 625, 635, 637 (1980); *Cordova v. Lynaugh*, 838 F.2d 764 (5th Cir.), *cert. denied*, 486 U.S. 1061 (1988).   The analysis required under *Beck* is different than an analysis of the sufficiency of the evidence. In addressing a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

4

could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). There is no doubt that the evidence was sufficient, under the *Jackson* standard, to support the jury's finding that Aguilar was guilty of capital murder. That, however, is not the issue on his lesser included offense claim. In reviewing a *Beck* claim, the question is not whether the evidence supported the conviction on the more serious offense, but whether, if given the option, "the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater . . .". *Beck*, 447 U.S. at 635.

In this case, the jury could easily have believed that they came to the trailer looking for Esparza; that they found the Chavezes, but not Esparza, in the trailer; that they beat Leo, Sr. to try to get him to divulge Esparza's whereabouts; and that Quiroz – who shot Leo, Sr. *before* Aguilar took the gun– acted on his own, without direction from, or agreement with, Aguilar, to kill Leo, Sr. Neither Aguilar nor Quiroz had any apparent motive to kill the Chavezes. Aguilar may have been angry at Esparza, but there is no evidence that he had any grudge against either of the victims. Moreover, there is no evidence of an agreement to kill the Chavezes – there is not even evidence that either Aguilar or Esparza knew the Chavezes were in the trailer. It is the murders of the Chavezes – not the accomplices' intent regarding Esparza – that forms the basis of Aguilar's conviction, and the finding of an agreement to kill *both* of the Chavezes that elevates the crime to capital murder.

On the facts of this case, reasonable jurists can disagree about whether the evidence would have allowed the jury to conclude that Quiroz committed the first of the two murders on his own initiative, therefore making Aguilar not guilty of that murder under Texas' law of parties. Therefore, Aguilar is entitled to a COA on this issue.

5

C. <u>Other Claims</u>

As to Aguilar's other claims for relief, this Court concludes that under clear, binding, precedent, Aguilar has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As to those claims that have been dismissed on procedural grounds, this Court concludes that jurists of reason would not find it debatable whether the petition states valid grounds for relief and would not find it debatable whether this Court is correct in its procedural determinations. Therefore, Petitioner is not entitled to a certificate of appealability on these claims.

## RECOMMENDATION

For the foregoing reasons, it is recommended that:

1. Aguilar's Motion For A Certificate Of Appealability (Docket Entry 50) be granted in part and denied in part;

2. Aguilar's motion be granted as to his seventh ground for relief, contending a violation of his right to due process of law by the trial court's refusal to give a lesser included offense instruction to the jury; and

3. Aguilar's motion be denied as to all other claims for relief.

## NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United States Automobile Association*, 79 F.3d 1415 (5th Cir.

1996).

Brownsville, Texas
July 27, 2004

                                                */s/ Felix Recio*
                                                FELIX RECIO
                                                UNITED STATES MAGISTRATE JUDGE