IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 0 6 2004

Michael N. Milby
Clerk of Court

| | |
|---|---|
| JESUS LEDESMA AGUILAR, § | |
| Petitioner § | |
| § | |
| VS. § | CIVIL ACTION NO. B-01-195 |
| § | |
| DOUGLAS DRETKE, DIRECTOR, § | |
| Texas Department of Criminal Justice- § | |
| Correctional Institutions Division, § | |
| Respondent. § | |

## PETITIONER'S OBJECTIONS TO THE
## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

COMES NOW, Jesus Ledesma Aguilar, who has petitioned this Court for a Writ of Habeas Corpus and a Certificate of Appealability and hereby files these limited objections to the Magistrate Judge's Report and Recommendation.

### LEGAL STANDARDS

Mr. Aguilar's application for writ of habeas corpus is governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, before an appeal from the dismissal or denial of a § 2254 habeas petition can proceed, the petitioner must first obtain a Certificate of Appealability, which will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. Section 2253(c)(2).

The Fifth Circuit has recently explained that in order to make a "substantial showing of the denial of constitutional right" a habeas petitioner must simply demonstrate "that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further."

C:\Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content.IE5\WXMB01EF\obj report and recommendation 08[1] 06.04.wpd

1

*Hernandez v. Johnson*, 213 F. 3rd 243, 248 (5th Cir. 2000). Specifically, where a district court has rejected a prisoner's constitutional claims on the merits, the habeas petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*

## I.   THE PETITIONER SUPPORTS THE MAGISTRATE'S CONCLUSION THAT THIS COURT SHOULD ISSUE HIM A COA ON HIS *BECK v. ALABAMA* CLAIM.

As the Magistrate Judge has recommended granting relief to Mr. Aguilar's Seventh Claim for relief, Mr. Aguilar respectfully does not object to this recommendation, and, in fact, whole-heartedly endorses it. Because the Magistrate Judge disagrees with this Honorable Court on the issue of whether Mr. Aguilar was entitled to a jury instruction on a lesser-included offense of non-capital murder, Mr. Aguilar believes that he has met 28 U.S.C. Section 2253(c)(2) requirements of "a substantial showing of the denial of constitutional right."

In his Report and Recommendation, the Magistrate Judge concluded that reasonable jurists could disagree about whether the evidence would have allowed the jury to conclude that Quiroz committed the first of the two murders on his own initiative, therefore making Aguilar not guilty of the first murder under the Texas law of parties. *Report and Recommendation*, p. 5. Specifically, the Magistrate Judge has found that Mr. Aguilar's jury "could have easily believed" that: (1) Mr. Aguilar did not have the motive to kill either the Chavezes, and, in fact, did not even know them or that they would be in the trailer; (2) Quiroz acted on his own initiative without any agreement with or direction from Mr. Aguilar with respect to the shootings and/or the beatings; (3) Mr. Aguilar's intent and motive regarding Esparza, if any, did not extend to the Chavezes. *Id.* Accordingly, the Magistrate concluded that Mr. Aguilar was at least entitled to a COA on this issue. *Id.*

C:\Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content.IE5\WXMB01EF\obj report and recommendation 08[1] 06 04.wpd

2

In contrast to the Magistrate's Report and Recommendation, this Honorable Court has come to quite the contrary conclusions with respect to Mr. Aguilar's *Beck* claim. In its previous opinion, this Court specifically found that "[i]n this case, the evidence leaves no doubt that Petitioner was a party to the murder of Leo Sr." *Slip Op.* p. 8. First, this Court concluded that only Mr. Aguilar and not Quiroz had any connection to the Esparza trailer, and thus it had to follow that Mr. Aguilar had motive to kill the Chavezes. *Id.* at 9. Second, this Court concluded that both Aguilar and Quiroz participated in the beatings of the Chavezes, which supposedly indicated their mutual acquiescence in the criminal act. *Id.* Finally, this Court concluded that Mr. Aguilar disposed of the murder weapon, which, again, showed that he and Quiroz formed an agreement to commit the murders of both of the Chavezes either before the shootings or contemporaneously with the shootings. *Id.* Accordingly, this Honorable Court firmly stated that "the evidence would not permit a jury rationally to find Petitioner guilty of lesser included offense of non-capital murder and acquit him of the greater offense of capital murder." *Id.* at p. 9-10.

In *Hernandez v. Johnson*, 213 F. 3rd 243, 248 (5th Cir. 2000), the Fifth Circuit has held that in order to make a substantial showing of denial of constitutional right, a habeas petitioner must simply demonstrate "that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." In this case, Mr. Aguilar has shown that two well-respected, learned federal judges of different rank can come to diametrically opposed conclusions with respect to his Seventh Claim of Relief. This clearly satisfies the *Hernandez* standard of "issues debatable among jurists of reason." Accordingly, the Petitioner prays that this Court issue him a COA with respect to his *Beck* claim.

C \Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content IE5\WXMB01EF\obj report and recommendation 08[1] 06 04 wpd

3

II. **THE PETITIONER OBJECTS TO MAGISTRATE'S RECOMMENDATION THAT THIS COURT SHOULD DENY PETITIONER A COA ON HIS INSUFFICIENCY OF EVIDENCE CLAIM AND PRAYS THAT THIS COURT ISSUE HIM A COA.**

The Petitioner respectfully objects to this Court's denial of relief on his insufficiency of evidence claim. The Petitioner respectfully disagrees with Magistrate Judge Recio's finding that the Petitioner's insufficiency of evidence claim was "foreclosed by clear and binding precedent" and renews his previous objections and therefore asks for a Certificate of Appealability. The Petitioner will show that, even under the deferential standard of review established in *Jackson v. Virginia*, the State's evidence was plainly insufficient to support a finding that Mr. Aguilar was a party to the murder of Leo Chavez and that the finding that he was responsible as a party to this murder violated his rights to due process of law. The Petitioner will further show that the State's evidence was so weak and incohesive that reasonable jurists would at least find it debatable as to whether his petition stated valid grounds for relief. Thus, the Petitioner respectfully objects to this portion of Magistrate Judge's Report and Recommendation and moves this Court to issue a certificate of appealability on this claim. Petitioner will show that his due process rights under the Fifth and Fourteenth Amendments were thereby violated.

In his habeas petition, Mr. Aguilar properly challenged the sufficiency of evidence in support of his capital murder conviction. Specifically, Mr. Aguilar argued that evidence was insufficient to convict him as a party to the murder of Leo Chavez. Mr. Aguilar previously requested that the Court grant him federal habeas relief on this claim because the Texas Court of Criminal Appeals decision was contrary to, or involved an unreasonable application of clearly established Supreme Court precedent. Following the district court's denial of relief on this ground, Mr. Aguilar filed a motion for Certificate of Appealability, in which he argued, inter alia, that reasonable jurists could find it

C:\Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content.IE5\WXMB01EF\obj report and recommendation 08[1] 06 04.wpd

4

debatable whether the evidence was insufficient to convict him as a party to the murder of Leo Chavez. Nevertheless, the Magistrate Judge Recio declined to recommend a COA and, without further analysis, stated that this claim was "foreclosed by clear and binding precedent." Mr. Aguilar now objects to this part of Magistrate's Report and Recommendation and urges the Court to grant him a COA on this issue.

The Supreme Court has established that in addressing a sufficiency of evidence claim, "the relevant question is whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Mr. Aguilar was charged with capital murder for intentionally and knowingly causing the death of more than one person during the same criminal transaction under Tex. Penal Code Section 19.03(a)(7)(A). The jury was instructed that, under the Texas law of parties, "[a] person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code Section 7.02 (a)(2).

Mr. Aguilar was convicted of capital murder and sentenced to death. In its latest opinion, this Court has stated that "there is no doubt that the evidence was sufficient, under the *Jackson* standard, to support the jury's finding that Mr. Aguilar was guilty of a capital murder. Mr. Aguilar strongly disagrees.

First, there was no direct evidence in the record that would establish that Mr. Aguilar had the requisite specific intent to aid Quiroz in commission of the murder of Leo Chavez. Rather, the record contained some circumstantial evidence, which, even under *Jackson*, was plainly insufficient to

C:\Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content.IE5\WXMB01EF\obj report and recommendation 08[1] 06 04.wpd

5

support a capital murder conviction. Thus, the testimony of the only eyewitness, a young child, did not establish that the two men who he saw in the trailer on the night of the murders acted in concert with each other. On the contrary, the child's testimony established **only** that he was awoken by a gunshot, that he walked into the kitchen area of the trailer, and that shortly thereafter he observed Quiroz, not Aguilar, shoot his father, then throw the gun to Aguilar, who then shot at his mother. Even the Respondent conceded that the child was asleep prior to the beating and the shootings, and therefore could not testify as to whether it was Aguilar or Quiroz or both men who beat Leo Chavez, nor could he testify to the jury that he saw or heard one of the men instructing the other to act. *Respondent's Objections to Report and Recommendation,* p.27. Clearly, even under the *Jackson* standard, no rational juror could have determined from the child's testimony that Mr. Aguilar was a party to the murder of Leo Chavez.

Second, there was no evidence in the record that would establish that Mr. Aguilar even had the motive to kill Leo Chavez. Even according to Judge Recio, "[n]either Aguilar nor Quiroz had any apparent motive to kill the Chavezes." *Report and Recommendation,* p. 5. As the Magistrate Judge correctly reasoned, "Aguilar may have been angry at Esparza, but there is no evidence that he had any grudge against either of the victims." *Id.* In fact, there was absolutely no evidence of an agreement to kill the Chavezes and, according to Judge Recio, "there is not even evidence that either Aguilar or Esparza knew that the Chavezes were in the trailer." The Magistrate Judge correctly noted that "[i]t is the murders of the Chavezes–not the accomplices' intent regarding Esparza–that forms the basis of Aguilar's conviction, and the finding of an agreement to kill *both* of the Chavez that elevates the crime to capital murder." Accordingly, even if the jury was presented with some evidence that Aguilar may have had the motive to kill Esparza, that evidence would still not allow

any rational juror to transfer that into unto the Chavezes. Thus, no rational juror could have found that Mr. Aguilar had the motive to kill the Chavezes or to aid Quiroz in the shooting of Leo Chavez.

Third, the evidence that Mr. Aguilar tried to dispose of the murder weapon was inconclusive and plainly insufficient to link him to the gun that was actually used in the commission of the murders.

Thus, the testimony of the sole ballistics expert (testifying for the State) conflicted with the testimony of the sole eyewitness (a young child). While the ballistics expert could not conclusively establish the caliber of the murder weapon nor confirm that the gun linked to Mr. Aguilar in fact fired the lethal bullets, the testimony of the child actually exonerated Mr. Aguilar because the gun described by a child was a "small silver revolver" and not an "automatic six-shooter" to which he was linked. Moreover, the entire testimony of Mr. Florez, who allegedly purchased the six-shooter from Mr. Aguilar, was a joke. Not only did Mr. Florez admit on the stand that he "did not get the gun from Aguilar personally," he also admitted that on the day of the alleged firearm transaction he was drunk as the proverbial skunk, and that he "did not remember seeing Aguilar at all." *See* 13 RR 970-972. This same testimony also showed that Mr. Florez was half-blind, "could not see far", and that although he was so drunk that he could not remember anything about that day, he was instructed by a police officer to "just go ahead and write it down" anyway. *See* 13 RR 973.

Looking at all of the evidence adduced at trial, even under the highly deferential lens of *Jackson v. Virginia*, the evidence was plainly insufficient to support Mr. Aguilar's capital murder conviction under the theory that he was a party to the murder of Leo Chavez. Without any direct evidence, adduced either by ballistics, fingerprints, DNA,[1] or eyewitness testimony, the jury simply

---

[1] See Section III, infra.

had no basis for finding that Mr. Aguilar and Mr. Quiroz had an agreement to kill Leo Chavez. While there was some circumstantial evidence that weakened Mr. Aguilar's case, it was not enough to establish that the two men had been acting in agreement on the fateful night of the murders. On the contrary, the evidence suggested that Mr. Quiroz committed the first of the two murders on his own initiative, without any direction from or any agreement with Mr. Aguilar.

On the facts of this case, rational jurists could disagree about whether the evidence would have allowed the jury to conclude that Mr. Quiroz committed the murder of Leo Chavez on his own initiative, therefore making Mr. Aguilar not guilty under the Texas law of parties; thus , violating his due process rights granted to him by the Fifth and Fourteenth Amendments. Therefore, Mr. Aguilar respectfully objects to the Magistrate Judge Recio's finding to the contrary, and prays that this Court grant him a certificate of appealability on this issue.

### III. THE PETITIONER OBJECTS TO THE MAGISTRATE'S RECOMMENDATION THAT THIS COURT DENY HIM A COA ON HIS FAILURE TO APPOINT EXPERTS CLAIM AND PRAYS THAT THIS COURT ISSUE HIM A COA

The Petitioner respectfully objects to the Magistrate Judge's recommendation that this Court deny him relief on his claim of error No. 3. The Petitioner disagrees with the Magistrate Judge's finding that the trial court committed no error when it refused to appoint a forensic pathologist and a ballistics expert on Mr. Aguilar's behalf. Therefore, the Petitioner renews his objections and prays that this Court issue him a COA on this issue.

The Supreme Court has long recognized that "mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to raw materials integral to the building of an effective defense." *Ake v. Oklahoma*, 470

U.S. 68, 77 (1985). In *Ake*, the Supreme Court reversed a capital conviction of an indigent defendant who "had no expert witnesses to rebut [the testimony of the State's experts] or to introduce on his behalf evidence in mitigation of his punishment." *Id.* at 73. The *Ake* Court reasoned that such fundamental failure to provide the petitioner with access to the experts necessary to assist in preparation of his insanity defense and in sentencing proceedings, undermined the fundamental fairness of the proceedings and constituted denial of due process. *Id.* at 84. The Court stated that "[w]hen a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." *Id.* As applied to capital defendants, such expert assistance is particularly necessary because "the consequence of error is so great, the relevance of responsive psychiatric testimony so evident, and the burden on the State so slim." *Id.* at 84.

Following *Ake*, the Congress enacted 21 U.S.C. Section 848 (q) which further extended this right for defense funding to post-conviction litigation. Specifically, this statute provided that "[i]n any post-conviction proceeding under section 2254 or 2255 . . . any [capital] defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services." This statute highlights the importance of expert funding in the modern-day trial. The Congress must have thought the defense's right to expert funding essential to the fundamental fairness of the trial - otherwise, it would have never extended this right to post-conviction litigation.

In *Ake*, the Court relied on three relevant factors to determine whether the defendant who wants to raise a defense of insanity is entitled to an assistance of a psychiatrist: (1) the private

C:\Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content.IE5\WXMB01EF\obj report and recommendation 08[1] 06 04.wpd

9

interest that will be affected by the State's denial of funds; (2) the governmental interest that will be affected if the funds are provided; and (3) the probable value of the additional or substitute procedural safeguard, and the risk of an erroneous deprivation of the affected interest if the funds are not provided. *Ake*, 470 U.S. at 77. While the Ake Court did not establish a strict three-factor test, the Court did rely heavily on these factors in order to conclude that to qualify for such expert assistance, a defendant must be able to "make a threshold showing to the trial court that his sanity is likely to be a significant factor in his defense." *Id.* at 83.

As to the first factor, the Supreme Court determined that "[t]he private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is uniquely compelling." *Id.* Clearly, this interest is even greater in the capital case, where an individual's life is at stake.

As to the second factor, the Supreme Court has also determined that "it is difficult to identify any interest of the States, other than in its economy, that weighs against recognition of this right." *Id.* at 79. The Court reasoned that, unlike a private litigant, the State's interest in prevailing at trial is "necessarily tempered by its interest in fair and accurate adjudication of criminal cases." *Id.* Thus, the Court concluded, "a State may not legitimately assert an interest in maintenance of a strategic advantage over defense, if the result of that advantage is to cast a pall on the accuracy of the verdict obtained." *Id.* Consequently, the Court concluded that the government interest in denial of expert funding cannot be substantial, "in light of the compelling interests of both the State and the individual in accurate disposition." *Id.*

Finally, with respect to the third factor, the Supreme Court has determined that "[w]hen the State has made the defendant's mental condition relevant to his criminal culpability, and to the

C:\Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content.IE5\WXMB01EF\obj report and recommendation 08[1] 06 04.wpd

10

punishment he might suffer, the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense." *Id.* at 80. The Court reasoned that expert witness, such as psychiatrists, are uniquely qualified to conduct a professional examination of issues relevant to the defense, and as such, they allow the defendant to fairly present "at least enough information to the jury, in a meaningful manner, as to permit it to make a sensible determination." *Id. at* 82. Therefore, the Supreme Court concluded that the State's interest in its fisc must simply yield to the substantial interests of the individual and the State in an accurate proceeding. *Id.* at 83.

In his Report and Recommendation, the Magistrate Judge concluded that Mr. Aguilar was not entitled to a ballistics expert under *Ake* and that there was no due process violation when the trial judge refused to appoint one on his behalf. The Magistrate Judge reasoned that, while Mr. Aguilar's private interest was very strong and there was no apparent State interest in denying these funds, there was simply no probable value in having these experts appointed. With all due respect, the Magistrate is wrong.

### A.   *A ballistics expert could have determined the caliber of the murder weapon; potentially exonerating Mr. Aguilar.*

The Magistrate misunderstands the value of a ballistics expert. A ballistics expert was crucial to this case because the caliber of the alleged murder weapon was a significant factor in Mr. Aguilar's defense. According to State's ballistics expert, the weapon used in the homicide could have been either a .22 caliber revolver or a .25 caliber six-shooter. The testimony of the sole eye-witness, Leo Chavez, Jr., provided the jury with a description of a weapon consistent with a .22 caliber revolver but not an automatic .25 caliber six-shooter like that linked to Mr. Aguilar. Since a ballistic expert, retained by the State, was utterly incompetent at distinguish between a .22 caliber

C:\Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content.IE5\WXMB01EF\obj report and recommendation 08[1] 06 04.wpd

11

ammo and a .25 caliber ammo, it was essential that the defense had its own expert to confirm Mr. Aguilar's theory of the case. Without such expert assistance, the defense was highly prejudiced from the beginning, and, in the solemn words of a trial counsel, "haunted" the defense for the remainder of the trial.

Despite the clearly prejudicial effect of the trial court's refusal to appoint a ballistics expert, the Magistrate, again, faults Mr. Aguilar for not offering an affidavit or other evidence that would "call into question" the testimony of the State's expert. While Mr. Aguilar personally believes that the State's expert's inconclusive testimony calls itself into question, it is important to note that without at least the initial funding, no expert would have consulted an indigent criminal defendant such as Mr. Aguilar, nor produced an affidavit calling into question a testimony of another, **paid**, expert. (See above). Again, it is fundamentally unfair to demand that the trial counsel that represents indigent defendants possess the scientific training and expertise necessary to contradict the testimony of an expert.

In *Scott v. Louisiana*, 934 F. 2d 631, 634 (5th Cir. 1991), the Fifth Circuit has held that due process is violated when the State "prevented inspection by defense experts of tangible evidence that is both crucial to the conviction and subject to varying expert opinion." In *Scott*, a petitioner sought habeas corpus relief on the ground that he was denied due process when the trial court refused to appoint a ballistics expert to testify on his behalf. *Id.* at 632. The Court rejected this claim, holding that Scott failed to show both that the ballistics evidence was crucial to his conviction and that such evidence "would have been open to varying expert interpretation." *Id.* at 633. The Court reasoned that ballistics evidence was not crucial to the conviction because "[t]he crux of the prosecution's case was the testimony of . . . two eyewitnesses," and because "[t]he nature of the bullet recovered could

C \Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content IE5\WXMB01EF\obj report and recommendation 08[1] 06 04 wpd

12

have no negative effect on the strength of the eye-witness testimony that Scott fired his gun at the three men." *Id.* Moreover, the Court noted that the ballistics evidence in Scott's case was plainly meaningless because the State never found any weapon, and thus there was nothing to compare the fatal bullet with. For the same reasons, the Court concluded that the ballistics evidence could not have been "open to interpretation" and flatly refused relief.

In the present case, the situation with ballistics evidence is vastly different from *Scott.* Unlike in Scott, there was only one, not two, eyewitness, and he was only a little child, who did not even enter the scene until the first shot was already fired. Also, the forensic evidence in Mr. Aguilar's case failed to yield any objective results that would conclusively establish Mr. Aguilar's presence in the trailer on the night of the murders - there was no DNA evidence, no fingerprints, and the sole means of objectively identifying Mr. Aguilar as a shooter were to compare the rounds fired from the alleged murder weapon to the gun that was linked to Mr. Aguilar. Moreover, unlike *Scott*, the prosecution had the alleged murder weapon in its possession, and, in the course of the trial, the prosecutor effectively argued that, based on Mr. Aguilar's alleged disposal of the alleged murder weapon, Mr. Aguilar was guilty of capital murder as a party to the murder of Leo Chavez. Finally, the testimony of the sole eyewitness conflicted with the testimony of the ballistics expert because while the former testimony established that the gun actually used in the homicide was a "small silver revolver", the latter testimony was so inconclusive as to the caliber of the weapon, that the jury was left with an impression that it could well have been a weapon other than a "small silver revolver" that killed Leo and Annette Chavez. In sum, the ballistics is not a precise science, much like psychology. Experts can disagree as to the origins of the "completely obliterated" projectiles, like those found in the trailer. That is why due process requires that indigent defendants be provided with their own expert

to assist in preparation of the defense or to negate the testimony of the State's expert witness. Such fundamental due process was denied to Mr. Aguilar.

Furthermore, the Fifth Circuit has warned in *Scott* that "[w]hen prosecution and defense witnesses give contradictory testimony, the jury decides which witnesses to believe." *Id.* at 634. Therefore, it is improper for the court to "substitute its judgement regarding these determinations for that of the jury." *Id.* Yet, the Magistrate Judge's Report and Recommendation does just that—the Magistrate substitutes his own, judicial, judgment for that of Mr. Aguilar's jury. This is improper, and it is unfair to Mr. Aguilar.

Finally, while the Magistrate Judge correctly recognized the three factors relevant to the Supreme Court's reasoning in *Ake*, he misinterpreted the role these factors play in the decision of whether to appoint an expert. Contrary to Magistrate Judge's analysis, the Ake Court never established a *strict* three-pronged test, under which the failure to meet *any* of these factors would constitute automatic denial of expert assistance. Quite on the contrary, the *Ake* Court specifically stated that the only showing an indigent defendant needs to make is a mere threshold showing that the issue requiring expert assistance] is *"likely* to be a significant factor in his defense." *Id.* at 83. Therefore, it must follow that the principal inquiry is not, whether, in a hindsight, the overall probable value of the expert's testimony was going to be great or nil, but only whether this expert testimony would be valuable to the defense in light of the strategy that it was pursuing at the time. For instance, a psychiatrist testimony in *Ake* was of outmost value to the defense at the time because the defendant in *Ake* tried to pursue a defense of insanity. By same token, the testimony of a ballistics expert was of important to Mr. Aguilar, because he was trying to disprove that he had any connection to the alleged murder weapon. Thus, under *Ake*, Mr. Aguilar's showing of necessity was sufficient and the

C \Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content IE5\WXMB01EF\obj report and recommendation 08[1] 06 04 wpd

14

trial court's refusal to appoint a ballistics expert undermined the fundamental fairness of the trial and denied Mr. Aguilar his right to due process of law.

### B.  *A pathologist can help determine what type of weapon caused the wound.*

The Magistrate also misunderstands the value of a pathologist. A pathologist was relevant in this case, because the pathologists testify not only about the cause of death, but also about the type of the wound suffered by the decedent. In this case, one of the critical issues is the caliber of the gun, as discussed above. In particular, a pathologist could testify about various wound patterns which are found in wounds suffered from various different caliber weapons. For example, a .25 caliber six-shooter (like that linked to Mr. Aguilar) shot at close range would likely have a different wound pattern than a 16-gauge shotgun or a .22 caliber revolver (identified by the witness). Unfortunately, the trial counsel was not provided with any funding to contact any expert and thus could not produce an affidavit. Moreover, given the fact-specific inquiry in the type of wound suffered by the decedent, it would have been impossible for the trial counsel, without proper expert assistance or training, to point out to any treatise or encyclopedia that would call into question the testimony of the State's expert pathologist. To demand from the trial counsel to possess the knowledge uniquely within the domain of the pathologist expert would effectively turn *Ake* on its head. Thus, the Magistrate's opinion places incorrect, and, undue burden, on those trial counsel who are appointed to represent indigent, as contrasted with private, criminal defendants.

Based on the facts of this case, reasonable jurists could disagree about whether Mr. Aguilar was entitled to expert assistance of a forensic pathologist and a ballistics expert. Accordingly, Mr. Aguilar objects to the Magistrate's Report and Recommendation and prays that this Court issue a COA on this claim.

C:\Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content.IE5\WXMB01EF\obj report and recommendation 08[1] 06 04.wpd

15

### IV. THE PETITIONER RENEWS HIS PREVIOUS OBJECTIONS WITH RESPECT TO ALL OTHER CLAIMS AND PRAYS THAT THIS COURT ISSUE HIM A COA WITH RESPECT TO THOSE CLAIMS.

First, the Petitioner respectfully objects to Magistrate's recommendation that this Court deny him a COA on his claim Numbers 22 through 25 relating to the police station lineup, the admission of allegedly false testimony, and alleged bias by the Texas Court of Criminal Appeals. The Petitioner believes that the Texas Court of Criminal Appeals provided no guidance as to why the issues were procedurally defaulted, nor explained its that the petition was an abuse of writ.[2] Accordingly, the Petitioner renews his previous objections and respectfully requests that this Court conduct a de novo review of his claim. Alternatively, the Petitioner asks that this Court issue him a COA so that another Court may conduct such further review as necessary with respect to these claims.

Second, the Petitioner respectfully objects to Magistrate's recommendation that this Court deny him a COA on his fourth claim of relief relating to the prejudicial effect of the publicity on the fairness of his trial. The Petitioner renews his previous objections that the trial court committed a prejudicial error when it denied Mr. Aguilar's motion for a mistrial and hereby incorporates his previous argument by reference.

Third, the Petitioner respectfully objects to the Magistrate's conclusion that this Court should deny him a COA on his claim that the Texas Death Penalty Statute is unconstitutional. The Petitioner renews his previous objection that the Texas death penalty statute is unconstitutionally vague because the special issues the jury must answer in assessing a defendant's penalty do not define the

---

[2]In fact, the Court of Criminal Appeals even managed to offer the conviction by citing to evidence that was not in the record.

terms "reasonable expectation," and "probability." Given the status of the case law, Aguilar believes that a Certificate of Appealability is ripe.

With respect to the remaining Claims for Relief, the Petitioner incorporates by reference his prior briefing and objects for the reasons given therein.

Respectfully submitted,

SERGI & ASSOCIATES, P.L.L.C.
109 East Hopkins, Suite 200
San Marcos, Texas 78666
Telephone: (512) 392-5010/Fax: (512) 392-5042

BY: *David Sergi by permission*
David K. Sergi
Attorney for Jesus Ledesma Aguilar
State Bar No. 18036000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was mailed on August 6, 2004 via first-class mail to:

Ms. Katherine Hayes
Assistant Attorney General
Texas Attorney General's Office
P.O. Box 12548
Austin TX 78711

*David Sergi by permission*
DAVID K. SERGI