United States Court of Appeals
Fifth Circuit
**F I L E D**
October 12, 2005
Charles R. Fulbruge III
Clerk

United States District Court
Southern District of Texas
FILED
JAN 0 3 2006
Michael N. Milby
Clerk of Court

REVISED NOVEMBER 3, 2005

**UNITED STATES COURT OF APPEALS
For the Fifth Circuit**

No. 04-70025

JESUS LEDESMA AGUILAR

Petitioner - Appellant

VERSUS

DOUG DRETKE, Director, Texas Department of Criminal Justice, Correctional Institutions Division

Respondent - Appellee

Appeal from the United States District Court
For the Southern District of Texas

Before HIGGINBOTHAM, DAVIS, and PRADO, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Petitioner, Jesus Ledesma Aguilar (Aguilar), was convicted of capital murder and sentenced to death in Texas state court for the murders of Annette and Leonardo Chavez, Sr. In this appeal, Aguilar challenges the district court's dismissal of his habeas petition. Aguilar seeks COA on six claims on which relief was denied by the district court. He also seeks reversal on the merits

of the single claim on which the district court granted COA. For the reasons discussed below, we deny habeas relief on that claim. We also deny COA on the remaining claims.

I.

Petitioner was convicted in Texas state court of capital murder for intentionally and knowingly causing the death of Leonardo Chavez, III and his wife, Annette Chavez, during the same criminal transaction. The essential facts are summarized below.

Aguilar and Rick Esparza, who were longtime friends, worked together in the sale of marijuana. Rick initially worked for Aguilar beginning in November 1994 in transporting marijuana from their homes in Texas to Mississippi in Rick's vehicle. Shortly thereafter, another supplier asked Rick to transport marijuana to Mississippi, and he began dealing without Aguilar. Apparently, Aguilar felt Rick was stealing his business, and this caused friction between the two men.

Aguilar began stopping by Rick's trailer and accusing Rick of running drugs without him. Rick testified that Aguilar threatened Rick's life on a number of occasions. Rick stated that he was afraid of Aguilar because he had seen "the way [Aguilar] hurts people."

In spite of Aguilar's threats, Rick maintained his own drug courier business. Rick often asked his sister, Annette Chavez, and her family to stay at his home during out-of-town trips. On June

8, 1995, Rick and his wife took a load of drugs to Mississippi. Annette, her husband Leo, and their two children, Leo Jr. (nine years old) and Lincoln (about two years old), stayed at Rick's home.

Aguilar spent much of the afternoon and evening of June 9 drinking with friends. At approximately 9:00 p.m., he was at a friend's house with, among others, David and Chris Quiroz (Aguilar's nephew). Their host eventually went to bed. As David Quiroz was leaving, he saw Aguilar and Chris Quiroz walk toward a red Buick owned by Chris' mother.

At approximately 5:00 a.m., Leo, Jr. was awakened from his bed in Rick's trailer by the sound of a gunshot. Leo, Jr. got out of bed and entered the kitchen. Because there was no wall between the rooms, Leo, Jr. could see into the living room, which was illuminated by a small lamp. Leo, Jr. saw his parents on the floor with two men standing over them. Leo, Jr. testified that the "American" man told his father to "[g]et your fat ass up," and then saw the man shoot his father. The "Mexican" man then took the gun and shot his mother.[1] Leo, Jr. ran to the neighbors for help. A pathologist testified it was obvious from markings on Leo Sr.'s and Annette's bodies that they were severely beaten before they were shot.

---

[1] A pathologist testified as an expert witness for the state and stated that the couple had been shot "execution style." 20 TR 738.

3

That afternoon, Daniel Pena was driving around with Aguilar and Chris Quiroz when Aguilar asked Daniel to go to Rafael Flores, Jr.'s residence. Aguilar offered to sell a .22 caliber revolver to Rafael. Rafael bought the revolver and gave it to his brother, who in turn gave it to their father. The police later received a tip that they could recover the murder weapon from the Flores' residence, which they did. After recovering the weapon, the police lab compared bullets from .22 caliber revolver with the .22 caliber bullets recovered from the Chavezes' bodies. The ballistics expert could not rule this revolver in or out as the murder weapon.

Approximately two weeks after the murders, Leo, Jr.'s grandmother was reading the newspaper when Leo, Jr. saw a picture and told her that two of the men in the picture were the men who "hurt" his parents. His grandfather took Leo, Jr. to the police station where Leo, Jr. identified Chris Quiroz as the "American" who shot his father, and Aguilar as the "Mexican" who shot his mother. Leo was unable to identify Aguilar in a police lineup, but an investigator for the Cameron County Sheriff's office testified that Leo, Jr. became visibly upset when Aguilar entered the lineup room.

Following the guilty verdict and affirmative findings on the Texas special issue, the trial court sentenced Aguilar to death in accordance with Texas law. The Texas Court of Criminal Appeals affirmed Aguilar's conviction and sentence and the United States

Supreme Court denied certiorari. See Aguilar v. State, No. 72,470 (Tex. Crim. App. 1997), cert. denied, 523 U.S. 1139 (1998). Aguilar then filed a state application for post conviction relief which the Texas Court of Criminal Appeals denied. Ex Parte Aguilar, No. 36,142-01 (Tex. Crim. App. June 10, 1998). Aguilar later filed his federal habeas corpus petition. At an evidentiary hearing before a magistrate judge, Aguilar asked the court to dismiss his petition without prejudice so that he could return to state court and raise unexhausted claims. The request was granted. Aguilar's successive state habeas petition was dismissed by the Texas Court of Criminal Appeals as an abuse of the writ in November 2001. Five days later, he filed another federal habeas corpus petition. The state moved for summary judgment on the writ and the motion was referred to a magistrate judge for Report and Recommendation. The magistrate judge recommended that all of Petitioner's claims be denied, except one. The magistrate judge recommended that Aguilar be granted relief on his claim that he was deprived of due process by the trial court's failure to charge the jury on a lesser included offense of non-capital murder. The district court judge accepted all the magistrate judge's recommendations, except on the lesser included offense claim. The district court concluded that Petitioner was not entitled to relief on this claim and dismissed his petition. The district court later granted COA on Aguilar's lesser included offense claim.

II.

A.

Aguilar filed his federal habeas petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and therefore, the provisions of that act govern our scope of review. AEDPA prohibits a federal court from granting an application for habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d) (1996). Further, the state court's factual determinations are presumed correct and can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

B.

We consider first Aguilar's argument that the trial court violated his Fourteenth Amendment right to due process of law when it refused his request for a lesser included offense charge to the jury. The district court granted COA on this claim.

In Beck v. Alabama, 447 U.S. 625, 637, 100 S.Ct. 2382, 2389 (1980), the Supreme Court held that a lesser included offense charge is constitutionally required in capital cases "when the

6

evidence unquestionably establishes that the defendant is guilty of a serious, violent offense--but leaves some doubt with respect to an element that would justify conviction of a capital offense..." A defendant is entitled to the instruction if the jury could rationally acquit the defendant on the capital crime and convict on the non-capital crime. Cordova v. Lynaugh, 838 F.2d 764, 767 (5th Cir. 1998), cert. denied, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed. 2d 932 (1988).[2]

Aguilar argues that this standard is satisfied because the evidence supported a finding that he did not act in concert with Quiroz in the murders of both Annette and Leo Chavez, Sr. Aguilar contends that a reasonable jury could have found that he only murdered one of the victims, Annette; that Quiroz acted on his own volition when he shot Leo, Sr., and that Aguilar simply followed suit. Based on this view of the evidence, Aguilar argues that a rational jury could have acquitted him of the capital crime and convicted him of the non-capital crime, and therefore Beck required the court to give the lesser included offense instruction.

---

[2] Texas law is consistent with the federal constitutional rule. In Texas, the courts apply a two prong test to decide whether a defendant is entitled to a lesser included offense charge. See Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). The first requirement is that "the lesser included offense must be included within the proof necessary to establish the offense charged." Id. at 672. The second prong requires that "some evidence must exist in the record that if the defendant is guilty, he is guilty only of the lesser offense. Id.

7

The state charged Aguilar with the capital offense of committing two murders during the same transaction. ("A Person commits an offense if the person commits murder as defined under Section 19.02(b)(1) and...the person murders more than one person: during the same criminal transaction...." Tex. Pen. Code Ann. § 19.03(a)(7)(A)). The state is not required to prove that the same person committed both murders. According to the Texas law of parties, "[a] person is criminally responsible for an offense committed by the conduct of another if:...acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense...." Tex. Pen. Code Ann. § 7.02(a)(2).

The evidence was clearly <u>sufficient</u> to establish that Aguilar participated in the murder of Leo, Sr. The question is whether the evidence would permit a reasonable jury to make a contrary finding: that Quiroz acted alone in Leo's murder without encouragement or other participation by Aguilar. After reviewing the record, we are satisfied it would not permit a rational jury to find that if Aguilar is guilty, he is only guilty of murdering Annette. As the district court pointed out, Aguilar-and not Quiroz-had the motive to kill Esparza or his family members. The evidence established that Aguilar had been to the trailer home on several earlier occasions, threatening Esparza, and had previously discussed with Annette Chavez the whereabouts of Esparza. Aguilar entered the

8

Esparzas' trailer with his eighteen-year-old nephew (Quiroz), who had no connection to the Chavezes or Esparza or with Aguilar's marijuana trafficking. The two entered the trailer with a firearm and proceeded to severely beat the Chavezes. Then, the couple was shot "execution style" within minutes of each other. There is no evidence in the record supporting Aguilar's contention that he did not have intent to kill both Leo and Annette when he and Quiroz entered the residence.[3] A reasonable jury, who would find that Aguilar was the second shooter in this double murder, could not find that he did not encourage or otherwise participate in the shooting of Leo, Sr. We therefore conclude that the district court did not err in rejecting Aguilar's Beck claim.

III.

A.

Next, we address Petitioner's claims for COA. Under AEDPA, Aguilar must obtain a COA before he can appeal the district court's denial of his habeas petition. 28 U.S.C. 2253(c)(1). This court will grant a COA if Aguilar makes a substantial showing of the denial of a constitutional right, which includes showing that "reasonable jurists could debate whether (or for that matter, agree

---

[3] In Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), the Supreme Court made clear that the jury must be permitted to consider a verdict of guilt of a noncapital offense "in every case" in which "the evidence would have supported such a verdict." Id. at 610 (citing Beck v. Alabama, 447 U.S. at 627, 100 S.Ct. at 2384.

that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039 (2003) (citing Slack v. McDaniel, 529 U.S. at 484 (2000)). To satisfy this standard, Aguilar must demonstrate that reasonable jurists could find the district court's resolution of his constitutional claims debatable. Id. at 336. Further, when the denial of relief is based on procedural grounds, then Petitioner must show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 592 U.S. at 484. It is clear that petitioner need not show that the appeal will succeed in order to obtain a COA. Id. at 337. We consider each of Petitioner's claims below.

B.  Ineffective Assistance of Counsel

First, Petitioner contends that his Sixth and Fourteenth Amendment rights to effective assistance of counsel were violated because direct appeal counsel failed to properly brief his sufficiency of the evidence argument on direct appeal in state court. In Aguilar's initial state habeas application, he did not assert this specific claim of counsel error as a ground for relief. In his successive habeas application, Aguilar did assert this error as a ground for relief. The Texas Court of Criminal Appeals dismissed the claim as procedurally defaulted under Texas Criminal Procedure Article 11.071(5)(a) as an abuse of the writ. The

10

district court found the claim unexhausted and procedurally defaulted. Because Aguilar did raise the claim in his second state habeas application, we disagree with the district court that the claim was not exhausted. We agree with the district court, however, that the claim was procedurally barred from federal habeas review.

As the Supreme Court stated in Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2551 (1991), "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." This court has consistently held that Texas' abuse-of-writ rule is ordinarily an "adequate and independent" procedural ground on which to base a procedural default ruling. Henderson v. Crockwell, 333 F.3d 592, 605 (5th Cir. 2003); Horsley v. Johnson, 197 F.3d 134, 137 (5th Cir. 1999); Matchett v. Dretke, 380 F.3d 844, 848 (5th Cir. 2004).

The state court dismissed Aguilar's claim based on an independent and adequate state remedy: the successive writ was dismissed as an abuse of writ under Texas Code of Criminal Procedure article 11.071 § 5(a). In his request for relief, Aguilar makes no attempt to argue actual prejudice or a fundamental miscarriage of

11

justice as required by Coleman. We therefore find that reasonable jurists would not debate whether the district court was correct in its ruling and we deny COA on this claim.

### C. Meaningful Appellate Review

Next, Aguilar argues that the Texas Court of Criminal Appeals was biased on direct appeal and it relied on facts not in the record. The district court found the claim procedurally defaulted because it was raised for the first time in Aguilar's second state habeas petition and dismissed as an abuse of writ pursuant to Texas Code of Criminal Procedure article 11.071 § 5(a). As discussed above, the Supreme Court recognized that a procedural bar exists to federal habeas review if the state court dismisses the application based on independent and adequate state grounds. Because the Texas Court of Criminal Appeals found that Aguilar's second state habeas petition was an abuse of the writ under Texas Code of Criminal Procedure article 11.071 § 5(a), and because Aguilar has not attempted to show actual prejudice or a miscarriage of justice, no reasonable jurists could find the district court's procedural ruling incorrect.

### D. Failure to Appoint Ballistics Expert

Aguilar also argues that the trial court's failure to appoint a ballistics expert to testify on behalf of Petitioner violated his right to due process. The state called Ronald Richardson, a firearms expert. He testified that both victims were killed by .22

caliber slugs. The bullets removed from the victims' bodies were badly damaged, and the expert was unable to determine whether they were fired from the .22 caliber pistol the state contended was the murder weapon. Before trial, Aguilar filed a written motion asking the court to provide a ballistics expert "to testify as to the potential weapon used in the alleged murders and evidence of ballistics in general." He argued generally that the "expert witness [was] important in this case and proceeding to trial without the witness would be prejudicial to the Defendant and would not afford him a fair trial...." The trial court denied his motion. In an oral pre-trial motion Aguilar again asked the court to provide a ballistics expert without giving specific reasons as to how it would aid in his defense.[4]

The state habeas court rejected Aguilar's claim because of his failure to provide an affidavit from trial counsel explaining what expert witness he anticipated calling, and how his defense was actually prejudiced through his inability to present that expert.

Habeas relief may be granted for failure to appoint a

---

[4] The defense asked the trial judge for permission to hire its own ballistics expert, stating: "The ballistics expert that appeared here for the Department of Public Safety last time, Your Honor, I think without, you know, really going into much of his testimony, I think was very inconclusive to some of his determinations, inconclusive as to what type - you know, the caliber, things of that nature, Judge. I would like to have an opportunity and I would like to have a ballistics expert come in here to be able to differentiate between .22 and .25 calibers, slugs, location of powder burns, types of powders that are used for ballistic purposes, projectile, things of that nature...."

ballistics expert where the evidence is both 1) critical to the conviction, and 2) subject to varying expert opinion. See Scott v. Louisiana, 934 F.2d 631, 633 (5th Cir. 1991); Yohey v. Collins, 985 F.2d 222, 227 (5th Cir. 1993). The defendant must also "demonstrate something more than a mere possibility of assistance from a requested expert." Yohey at 227 (citing Moore v. Kemp, 809 F.2d 702, 712 (11th Cir.), cert. denied, 481 U. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987)). The magistrate judge and district judge rejected Aguilar's claim because he failed to satisfy either prong of the test set forth in Scott and Yohey. The record evidence supports the conclusion that the state's inconclusive ballistics evidence—that the bullets could have been but were not necessarily fired from the purported murder weapon—was not critical to the conviction. Also, Aguilar failed to provide any evidence that his desired expert could have excluded the gun as the murder weapon.

In his COA application for the first time, Aguilar now claims that tests could have been performed to show that the gun had not been fired in years or that the gun did not have the victims' blood on it, in order to prove it was not the gun used in the murders. However, the record reveals that Aguilar never asked the trial court for appointment of a ballistics expert or other expert to show there was no blood splatter on the weapon or that it not been fired recently. He also produced no evidence of the likelihood that such evidence could be recovered from the weapon.

14

The record fully supports the state habeas court finding that Aguilar failed to show that evidence from a ballistics expert would have been beneficial to his case or that the evidence is subject to varying expert opinion. For the first time Aguilar, in support of his application, provided this court with several articles and books discussing the uncertainty of forensic science and how test results may be inaccurate. These treatises, however, are not helpful in showing how a ballistics expert would have assisted Aguilar in proving his innocence.

Because Aguilar has failed to show that a ballistics expert would have assisted him in proving his innocence or that the evidence in this case would be subject to varying opinion, we find that reasonable jurists would not find the district court's assessment of defendant's constitutional claims debatable or wrong and therefore deny COA.

F. Sufficiency of Evidence

Aguilar also seeks a COA on grounds that the evidence was insufficient to support the jury's finding that he was a party to the murder of Leo Chavez, Sr. and the finding that he was responsible for the murder of Annette Chavez.

In determining a sufficiency of the evidence claim, a court should consider whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). On direct appeal, the Court of Criminal Appeals found that the evidence was sufficient to support the jury's finding that Aguilar was a party to the murders. The court considered the eye-witness testimony of Leo Chavez, Jr. and his identification of Aguilar as the person directly responsible for the death of his mother. The court also observed that Aguilar, and not Quiroz, was the person with the motive to kill the people in the trailer home. The court also discussed the fact that Aguilar sold the .22 caliber revolver that was later discovered by the police and offered by the state as a possible murder weapon. Based on the foregoing evidence, the Court of Criminal Appeals found that a rational jury could find beyond a reasonable doubt that appellant was criminally responsible for the deaths of both victims and that the victims were killed during the same criminal transaction.

The district court adopted the magistrate judge's opinion that "[u]nder the very deferential Jackson standard, this was sufficient to support the jury's finding that Aguilar was a party to the second murder." Based on the evidence presented at trial, we conclude that the district court's conclusion based on the deferential Jackson standard was not debatable or wrong and we therefore deny COA.

    G.   Appearance Before Jury in Shackles

In his final claim, Aguilar argues that his right to due process was violated because he appeared before the jury in

shackles. The state habeas court rejected the claim on the ground that Aguilar should have raised the claim on direct appeal and on the additional ground that he did not refer to any specific objections in the trial record. On federal habeas review, the district court also refused to grant relief because Aguilar did not reference any specific or timely objection and only provided a statement in an affidavit by his trial counsel that he "requested" that Aguilar not be shackled in the presence of the jury. In his COA request to this court, Aguilar once again gives us no record reference where he objected to the fact that he was shackled in the presence of the jury and in our review of the trial record, we found no such objection.

In Ex parte Gardner, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996), the court found that claims which should have been raised on direct appeal are procedurally defaulted. Furthermore, in Busby v. Dretke, 359 F.3d 708, 719 (5th Cir.), this court established that "the Gardner rule set forth an adequate state ground capable of barring federal habeas review." In the instant case, Aguilar's claim that he was shackled in front of the jury should have been raised on direct appeal.

We conclude that reasonable jurists could not debate whether the state court erred in its procedural ruling regarding Aguilar's failure to raise his shackling claim on direct appeal. We therefore deny COA on this claim.

## Conclusion

For the reasons stated above, we AFFIRM the district court's judgment denying habeas relief on his claim that he was entitled to the lesser included offense jury charge. We also DENY COA on the remaining claims.